ALL AMERICAN BUS LINES et al. v. SAXON.

No. 32029.   June 25, 1946.

Rehearing Denied Sept. 10, 1946.

*172 P. 2d 424.*

George F. Short, Welcome D. Pierson, and George E. Fisher, all of Oklahoma City, for plaintiffs in error.

A. L. Morrison, of El Reno, and John E. Luttrell and John M. Luttrell, both of Norman, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of Harry Saxon against plaintiffs in error, All American Bus Lines, American Fidelity & Casualty Company, and Dillard Clyde Jackson, in an action to recover damages for personal injuries.

The action grew out of a dual collision of motor vehicles operated on a state highway. At approximately 12:15 or 12:30 a.m. May 30, 1943, Harry Saxon, the plaintiff below, was driving a gasoline transport truck-trailer motor vehicle in a northerly direction on U. S. Highway 66, going north from the city of Bristow, Okla. Reva Mae Parkinson, accompanied by her husband, Benjamin LeRoy Parkinson, was driving an Oldsmobile coupe along the same highway in the same direction. She came up behind the truck and at a point about one and one-half miles north of Bristow, attempted to pass the truck on the left side. At approximately the same time a motor passenger bus belonging to defendant All American Bus Lines, being driven by defendant Jackson, approached from the north. When the Parkinson automobile was 15 or 20 feet past plaintiff's truck

and before it had returned to the right side of the paved part of the highway, a collision occurred between the bus and the Parkinson automobile. The impact of the bus forced the automobile off the highway. The bus ran across the center of the highway and collided with plaintiff's truck with force that threw plaintiff to the ground, broke an auxiliary gasoline tank on the truck and ignited the gasoline. Plaintiff was burned about his face, neck, and arms, and injured.

Defendant Bus Lines, a motor carrier of passengers, is required to have a certificate of convenience and necessity and provide liability insurance or bond. 47 O.S. 1941 § 169.

Defendant American Fidelity & Casualty Company was the insurance carrier. Its liability was limited to $5,000 to each person injured as a result of any accident due to the negligence of the carrier.

Plaintiff sued All American Bus Lines, American Fidelity & Casualty Company, Reva Mae Parkinson, and Dillard Clyde Jackson. Plaintiff sought $50,000 damages and alleged as to defendant Reva Mae Parkinson that she "was negligent and careless in that she operated the said vehicle on the west side of said highway and passed the plaintiff's truck at a time when it was proceeding upgrade and approximately 200 to 300 feet south of the crest of a hill and at a time when the vision of the operator of said Oldsmobile was so obscured by reason of said hill that traffic approaching from the north on the opposite side of the hill could not be seen."

As to defendants Bus Lines and Jackson, plaintiff alleged negligence in that the bus was being operated while equipped with defective brakes and defective steering gear (the exact nature of which defects being unknown to plaintiff but was known to defendants); that the bus was operated at a high and dangerous rate of speed (to wit, approximately 50 miles per hour); and that the operator of the bus was care-

less in that the bus was caused to cut across the highway against the Parkinson automobile and after striking it, the bus struck the cab of plaintiff's truck violently so as to throw plaintiff from the truck cab and to cause the gasoline to escape from the tank and become ignited; and that plaintiff had driven his truck to the extreme right-hand side, or east portion of the highway, partially upon the east shoulder; that the Parkinson automobile was approximately 20 feet in front of his truck when the collision occurred, but that there was sufficient space on the west side of the automobile to enable the bus to safely pass had it been properly controlled and operated; that the joint and concurrent negligence of defendants caused the plaintiff's injuries; that plaintiff suffered "an oblique fracture of his left jaw . . . that the muscles, tendons and ligaments of his back and neck were . . . torn and damaged; that he suffered multiple contusions and abrasions . . . (and) an injury to his vertebrae . . . fracture of his . . . rib . . . second and third degree burns of his face, scalp, nose, ears, hands and arms; . . . a brain concussion . . . an injury to . . . his right arm . . . in the region of his elbow . . . (and as) result of his injuries he developed systemic malaria and . . . an enlarged liver and spleen."

Upon order of the court, plaintiff amended his petition by attaching a copy of the insurance policy and alleged:

". . . after this action was filed, (plaintiff) entered into a covenant not to sue . . . Reva Mae Parkinson, and her husband, (and agreed) to dismiss the . . . action insofar as Reva Mae Parkinson might be concerned, for a . . . consideration of $4,500.00. . . ."

A copy of the agreement was attached to the amended petition.

Defendants Bus Lines, Jackson, and American Fidelity & Casualty Company demurred. Defendant Reva Mae Parkinson defaulted in pleading.

The demurrers were overruled. Defendants Bus Lines and Jackson answered denying plaintiff's capacity to sue; they alleged a misjoinder of parties defendant and a misjoinder of causes of action. The answer then denied generally and specifically and alleged the bus was operated in a careful and prudent manner. These defendants pleaded plaintiff's injuries and damages were caused by the carelessness and negligence on the part of a third party, namely, defendant Reva Mae Parkinson, the contributory negligence of plaintiff and the unavoidability of the accident.

The answer pleaded the agreement and release of defendant Reva Mae Parkinson as a release of the answering defendants or a credit upon such judgment as might be rendered.

Defendant American Fidelity & Casualty Company answered similarly and alleged that its liability, if any, arose out of its contract of insurance, while the liability, if any, of the remaining defendants arose by reason of their negligence and therefore no joint liability of all the defendants exists; that the cause of action, if any, against the insurer was prematurely brought, that no cause of action could be prosecuted against the insurer until plaintiff has recovered a judgment against the assured.

The issues were joined. Defendants Bus Lines and Jackson and American Fidelity & Casualty Company sought separate trials. The applications were denied.

The verdict was favorable to plaintiff in the amount of $10,500. Judgment was rendered on the verdict against defendants All American Bus Lines and Dillard Clyde Jackson in the sum of $10,500 and against the defendant American Fidelity & Casualty Company in the sum of $5,000. Defendants appeal.

Six propositions are presented. The first is, "The trial court erred in per-

mitting the joinder of the insurance carrier with the motor carrier. . . ."

This court, in Temple v. Dugger, 164 Okla. 84, 21 P. 2d 482; Jacobsen v. Howard, 164 Okla. 88, 23 P. 2d 185; Enders v. Longmire, 179 Okla. 633, 67 P. 2d 12; Safeway Cab Co. v. McConnell, 181 Okla. 612, 75 P. 2d 884; Graves v. Harrington, 177 Okla. 448, 60 P. 2d 622; Be-Mac Transport Co. v. Larimore, 191 Okla. 249, 129 P. 2d 192; and American Fidelity & Casualty Co. v. Bennett, 182 Okla. 71, 76 P. 2d 245, determined the first proposition adversely to appellants and now adheres to the determination.

It is insisted that this court, in Temple v. Dugger and the subsequent cases, misconstrued the provisions of 12 O.S. 1941 § 265, which permits the plaintiff to unite several causes of action in one petition, whether they be legal or equitable, or both, where they arise out of any one transaction. It is urged that this is a misjoinder when the action so united does not affect all the parties to the actions joined.

The cause of action against the American Fidelity & Casualty Company is based solely upon its policy contract and is ex contractu, while the cause of action against Bus Lines and Jackson is based solely upon tort, it is ex delicto; the American Fidelity & Casualty Company denies its interest in the tort action, and the motor carrier and the individual who drove the bus are not interested in the phase of the action joined and based on contract.

The answer is stated in Enders v. Longmire, supra, and Jacobsen v. Howard, supra. The statute, 47 O.S. 1941 § 169, supra, provides joint liability in these words:

"Such liability and property damage insurance policy, or bond, shall bind the obligor thereunder to make compensation for injuries to or death of persons . . . resulting from the operation of any such motor carrier for which such motor carrier is legally liable."

If the insurance policy or a bond does not in words so provide, the statutory provision will within contemplation of law by judgment be read into the policy or the bond. The insurer, by law, is directly liable for the injuries resulting from the negligent operation of the motor carrier. The statute authorizes the joinder.

Defendants rely on Smith Stage Co. v. Ecker, 21 Ariz. 28, 184 P. 1001. Arizona apparently had no statute similar to 47 O.S. 1941 § 169, supra. This distinction was stated in Graves v. Harrington, supra.

Defendants argue that to allow joinder has the effect of prejudicing the jury and inducing larger verdicts, but agreement does not eradicate the effect of law, nor is the argument always sound because in some insurance prejudice might induce smaller verdicts against the principal defendant to hold liability within the amount of the insurance. When the American Fidelity & Casualty Company executed its policy and filed it with the Corporation Commission, it did so with full knowledge of the statute and its construction by this court by decision rendered nine years prior to the assumption of the risk. There is no reason for departure from the rule stated in the Dugger Case and many reasons for adherence to it.

It is argued the trial court erred in refusing to grant the defendants Bus Lines and Jackson a separate trial. The identical question was presented in G. A. Nichols Co. v. Lockhart, 191 Okla. 296, 129 P. 2d 599. It was there said that the case falls within the rule stated in American Fidelity & Casualty Co. v. Bennett, supra, and that "the court did not err in denying separate trials." The possibility of prejudice on the question of misjoinder is applicable to the question of separate trial.

It is contended that "Plaintiff, by releasing his claim against Reva Mae Parkinson . . . released all other defendants."

Defendants call attention to the distinction between a covenant not to sue one, or less than all, of several joint tort-feasors, and a release. The distinctions are stated in Hawber v. Raley, 92 Cal. App. 701, 268 P. 943; Chetwood v. California Nat. Bank, 113 Cal. 414, 45 P. 704.

The release and discharge from all damages by an injured person, as a general rule, releases all joint tort-feasors despite a statement contained in a release to the contrary. Gunther v. Lee, 45 Md. 60, 24 Am. Rep. 504; McBride v. Scott, 132 Mich. 176, 93 N.W. 243; Abb v. Northern Pacific R. Co., 28 Wash. 428, 68 P. 954; Sunset Copper Co. v. Black, 125 Wash. 565, 217 P. 5; Clark v. Union Elec. Light & Power Co., 279 Mo. 69, 213 S.W. 851. But the question is not free from doubt. McBride v. Scott, supra. Authorities to the contrary are not wanting in number or reasons stated. Whatever the rule elsewhere may be, this court is definitely committed so that "As between debtors and joint tort-feasors, complete and full satisfaction by one releases all; but if the instrument claimed to be a release contains a reservation of the right to sue the other joint debtor or tort-feasor, it cannot be said to be a release at all, but is, in effect, a covenant not to sue or proceed against the person released." Harn v. Interstate Bldg. & Loan Co., 77 Okla. 265, 188 P. 343; Dodson v. Continental Supply Co., 175 Okla. 587, 53 P. 2d 582.

In Safety Cab Co. v. Fair, 181 Okla. 264, 74 P. 2d 607, it is held:

"An acknowledgment by the plaintiff of satisfaction against two of five of the defendants sued as joint tort-feasors will not release the others unless such instrument shows that it was intended to have such effect." Bland v. Lawyer-Cuff Co., 72 Okla. 128, 178 P. 885; City of Wetumka v. Cromwell-Franklin Oil Co., 171 Okla. 565, 43 P. 2d 434.

In Dodson v. Continental Supply Co., supra, it is said that the rule is in accord with the weight of authorities. Adams v. Stanolind Oil & Gas Co., 187

Okla. 478, 103 P. 2d 526; American Nat. Bk. of Enid v. Crews, 191 Okla. 53, 126 P. 2d 733; City of Tulsa v. McIntosh, 90 Okla. 50, 215 P. 624; Cain v. Quannah Light & Ice Co., 131 Okla. 25, 267 P. 641.

In Safety Cab Co. v. Fair, supra, the rule stated in Throckmorton's Cooley on Torts, 1930, para. 80, persuaded us:

"And there is now a very respectable body of modern judicial authority in support of the sound and reasonable rule that every instrument in the nature of a release of a joint tort-feasor should be construed so as to carry out the intent of the parties, and, as not having the effect of releasing those tort-feasors not parties to it unless the intent to release them appears from a reasonable interpretation of the entire instrument."

We are not now persuaded to depart from the rule.

Is the verdict and judgment sustained by the evidence and the law? Defendants say that the undisputed facts in the case clearly establish that no act of negligence on the part of the bus driver was the proximate cause of the injury and that there was no negligence on the part of the bus driver.

The plaintiff does not contend that the bus driver's negligence constituted the proximate cause of the injury. Plaintiff alleges that his injuries were caused by the concurrent negligence of all the defendants and specific acts constituting the alleged concurrent negligence are sufficiently pleaded.

It is well settled that although concert is lacking the separate and individual acts of negligence of several persons, if the acts are combined to produce directly a single injury, each defendant is responsible for the entire result, even though a defendant's act of negligence alone might not have caused the injury. Garrett v. Haworth, 183 Okla. 659, 83 P. 2d 822.

"Concurrent causes are causes acting contemporaneously and which together cause the injury, which injury would not have resulted in the absence of ei-

ther." City of Okmulgee v. Hemphill, 183 Okla. 40, 83 P. 2d 189.

It is conceded by all that defendant Parkinson was guilty of negligence in operating her automobile at the time and place as shown by the evidence; that her negligence was a contributing cause of plaintiff's injury. Plaintiff contends this defendant's negligence was one of two concurrent causes. Defendants contend that it was the sole cause of plaintiff's injury and damages.

The issue, by the process of elimination, is whether there is evidence reasonably tending to prove that the driver of the bus was negligent in operating his bus at the time and place of the accident, and, if so, whether the evidence tending to prove the bus driver's negligence concurred with the negligence of Reva Mae Parkinson to cause plaintiff's injury.

The dual collisions occurred May 29, 1943, after midnight, at the time a light rain was falling; the pavement was slick; the shoulders to the highway were muddy. While plaintiff alleged that the bus was being operated with deficient brakes and steering mechanism, he failed of proof upon that score. Plaintiff also alleges that the bus was driven at a high and dangerous rate of speed of approximately 50 miles per hour. The collision occurred at a point 500 feet south of the crest of a hill on the highway; the lights on the bus, while going south before it reached the crest of the hill, could not be seen by plaintiff nor by the driver of the automobile as they were driving from the south approaching the crest of the hill. The evidence tends to prove the bus was being driven at a speed of 60 or more miles per hour as it passed over the crest of the hill to approach the scene of the accident. This evidence is contradicted by Jackson and other witnesses, passengers on the bus, who said the bus was being driven not to exceed 40 miles per hour.

The evidence is in hopeless conflict on the speed of the truck driven by plaintiff and the automobile driven by Reva Mae Parkinson. Defendants' evidence is to the effect that plaintiff was driving his truck at about 40 miles per hour and that the Parkinson automobile was being driven slightly faster. Plaintiff's testimony was that he was driving his truck at a speed of from 10 to 15 miles per hour, not exceeding 15 miles, and that the Parkinson car was being driven at about 25 miles per hour.

Defendant Jackson testified that he was unable to see the lights on plaintiff's truck until he, Jackson, reached the crest of the hill going south, but that he did see the lights on plaintiff's truck as soon as he reached the crest of the hill.

The testimony of two disinterested witnesses who measured the distance (the highway patrolman, Ellis, and the garage proprietor who supervised the removal of the wrecked bus and automobile) was that the distance from the crest of the hill over which the bus had come to the point of the collision was 500 feet.

These facts and circumstances were before the jury. If defendant Jackson's testimony is true as to the rate of speed of his bus and the truck, it would appear that the bus, driven at a rate not to exceed 40 miles per hour, traveled a distance of 500 feet before the collision occurred, after Jackson had seen the lights on the truck. If the truck was traveling at the same rate, 40 miles per hour as testified to by Jackson, it would have traveled an equal distance of 500 feet north between the time Jackson reached the crest of the hill and the time the collesion occurred. Therefore, when Jackson first saw the lights on plaintiff's truck, if his testimony be true, the truck must have been 1,000 feet away when Jackson saw it approaching. Jackson testified he saw the lights on the Parkinson car

immediately after he saw the lights on the truck and that was when the Parkinson car turned out to pass the truck.

The uncontradicted evidence is that the passenger bus was at all times to the west, or its right-hand side of the highway's center, until just before it collided with the Parkinson automobile; that then it was 3 or 3½ feet west of the highway's center. The bus did not cross the center line until after it had struck the Parkinson automobile when it was forced nearly off the highway in front of plaintiff's truck; then the bus cut across the center of the highway and struck the truck; the result was plaintiff's injury. There is evidence tending to show that when the bus struck the Parkinson automobile it blew out a tire on the left front bus wheel; that fact might have caused the bus to swerve across the center of the highway to strike plaintiff's truck. For a distance of 75 or 100 feet north of the point of collision the bus was entirely off the pavement and on the shoulder of the highway.

Immediately prior to the collision the bus cut back onto the pavement. It was then the Parkinson automobile was struck. The evidence tends to show that if the bus had continued on the shoulder of the highway it would not have struck the Parkinson automobile.

Defendants take the position that because the bus was at all times on the right side of the center of the highway the driver cannot be charged with negligence. Possibly the bus driver could not be charged with negligence because of any act committed after being confronted with a sudden emergency, placing his bus and his passengers in a position of peril, but if he was negligent in operating the bus at an excessive rate of speed such as was instrumental in bringing about the emergency and creating the position of peril, the bus driver was not excusable. Statutory law fixes the maximum rate of speed for passenger buses. It is not to exceed 45 miles per hour.

The jury resolved the conflict in evidence and circumstances. By the verdict and judgment there was evidence tending to prove negligence on the part of the bus driver because the testimony and evidence conflicted.

It is urged that since plaintiff received $4,500 in the settlement with defendant Parkinson and the verdict awarded him $10.500 in addition, the verdict is excessive. Defendants assert that his permanent disability as a truck driver amounted to not more than 20 or 25%. Defendants contend that had plaintiff's case come within the Workmen's Compensation Act his recovery would have been not to exceed $2,250 plus his medical expenses, hospital bills, etc., which were but slightly more than $2,000. The evidence shows plaintiff's expenses to have been $2,-599.24. Defendant's argue that though the $2,250 be allowed as medical expense, in view of the $4,500 plaintiff received from Parkinson, the verdict for the additional $10,500 must be excessive.

The contention is not tenable. Recovery under the Workmen's Compensation Act is no standard by which to measure recovery in a personal injury action. Many elements are to be considered in actions for damages for personal injuries, not items in awards under the Workmen's Compensation Act. One element is physical pain and suffering. Plaintiff suffered a broken jaw, an injury to his neck, burns on his face, neck and arms; he is permanently disfigured. Plaintiff was confined to the hospital for more than three months; skin grafts were made to him. Plaintiff testified:

"A. Well, that took some time. The first treatment was foil. It is an oily substance—. . . they started a treatment of about four days with saline, salt water is what I call it, and they would soak them for about two hours each day in that saline, dry them for about an hour to an hour and a half before they would dress them, and then after that, they used an acid, vinegar is what I called it, and they would soak them

in that vinegar. A. Well, there never was a fire burned as bad as that . . . that was also a two-hour application. Then when they prepared cod liver, that is where they grew the arm back in position, and they would soak that arm that way and then take a little brush and scrape that, each arm, until the blood would pop up on it, and then lay that stuff on it. A. And after they got that all ready to graft, they took it and washed it with a brush and soap, scrubbed it up, and then they soaked it in something—I never did know what it was, but it didn't hurt— . . . they put me to sleep. Q. These brushings they gave with a brush, did they cause any pain? A. You bet. Q. That was a painful operation? A. Yes, it was. Q. Now, after the grafts were made and after you came to, how did you find yourself? A. Well, I was on my bed, back in my room tied this way with both arms straight out on a board and the board tied down to the table. . . . Q. How long did you remain in that position? A. Three weeks. . . Q. Now, how about your left elbow? What was its condition? A. Well, the bone was exposed— Q. The left elbow. The left or the right? A. You asked about the left, I believe? Q. Yes. A. Well, the left was the—the worst part of it was in the elbow. It was quite bad, but wasn't as bad as the right arm. It—well, I don't know how to explain how bad it was, but it was just burned awful deep in the elbow. Q. How about your right elbow? A. Well, the bone was exposed there. The biggest proportion of the job was to get flesh growing over the bones, before skin could be grafted."

The evidence shows that the muscles of his arms are shrunken and that is a permanent injury. The verdict is not excessive.

It is contended that the trial court erred in giving instructions 15, 16, and 17, and particularly 15, where the court told the jury:

"No. 15. You are instructed that should you find from the evidence that the defendants were guilty of the negligence alleged in plaintiff's petition, which was the direct and proximate cause of the accident and resulting injury, if any, to the plaintiff, then your verdict should be for the plaintiff and against the defendants, unless, upon the other hand, you should find that the plaintiff himself was guilty of contributory negligence which, combining and concurring with the negligence of the defendants, proximately caused the accident resulting in the injuries complained of, in which event your verdict should be for the defendants, notwithstanding their negligence."

There is no contention that this or the other instructions complained of were erroneous other than that the court therein made no mention of the $4,500 which plaintiff received in the Parkinson settlement and did not therein tell the jury that defendants were entitled to credit therefor in fixing plaintiff's total recovery.

Defendants overlook instruction No. 21 covering the measure of damages wherein, after instructing on the different elements which the jury might take into consideration in arriving at the amount of recovery in case they should find for the plaintiff, the jury was told:

". . . and award him such damages as you may determine from the evidence will reasonably compensate him therefor, and in fixing such sum you must take into consideration the fact that plaintiff has already received the sum of $4,500 from Reva Mae Parkinson."

Instructions are to be considered in their entirety; no particular paragraph is to be singled out or a part given consideration to the exclusion of other parts or paragraphs. The jury was so instructed in the instant case.

Affirmed.

HURST, V.C.J., and OSBORN, BAYLESS, and DAVISON, JJ., concur.