Wilbur J. TAYLOR, Plaintiff,

v.

**BEECH AIRCRAFT CORPORATION, a Delaware Corporation, Defendant.**

**No. CIV–75–0520–E.**

United States District Court,
W. D. Oklahoma.

Jan. 30, 1976.

70

Doyle Watson of Watson & Watson, Drumright, Okl., and Burton J. Johnson of Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for plaintiff.

B. J. Cooper of Cooper, Stewart, Elder & Abowitz, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

Plaintiff, injured in a plane crash, brings this action to recover damages from the manufacturer of the allegedly defective aircraft.

Defendant seeks summary judgment on the ground that plaintiff has executed a release of all claims. That document reads in pertinent part:

"That the Undersigned, being of lawful age, for the sole consideration of TWELVE THOUSAND FIVE HUNDRED AND NO/100 Dollars ($12,500.00) . . . does hereby . . . release, acquit, and forever discharge Jim W. Shideler, Bobby Walls, and all others in privity with them.

and [their] agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 2nd day of November, 1973, at or near the Cushing Municipal Airport, Payne County, Oklahoma."

Defendant relies upon the opinion of the Oklahoma Supreme Court in *Brown v. Brown,* 410 P.2d 52 (1966), wherein the court, with reference to a release containing language similar to the above, stated:

" . . . We are constrained to hold that the release intended to release 'all other persons, firms or corporations who are or might be liable for all claims of any kind or character' arising out of the accident. To hold otherwise would be to disregard the plain language of the release." At 57.

Plaintiff urges the court to deny the motion on the ground a mutual mistake attended execution of the document in that plaintiff intended to release only Shideler and Walls.

The court concludes the defendant's motion should be denied, but inasmuch as the court's reason differs from the reason urged by plaintiff, full explanation follows.

 If the defendant now before the court was in privity with Shideler and Walls, or was a *joint* tortfeasor, such defendant's motion for summary judgment would be granted. The release as to such defendant is clear and unambiguous. No claim of fraud in the inducement is made, notwithstanding plaintiff's notation in his affidavit that he was not represented by counsel and that releasee's counsel advised him that the release was limited to those named. The release is short, legible and comprehensible. This is not an instance where a phrase purposed to serve as a pitfall for the unwary has been hidden in small type, imbedded in pages of language foreign to the layman. The releasor cannot impeach his release on the ground of failure to comprehend its legal effect when an ordinarily prudent reading of the document would give notice.

Nor are there any other facts before the court suggestive of fraud or oppression. The amount given in consideration for the release and the timing of its execution are two factors which courts have considered. No claim is made here that $12,500 was invaluable consideration or that this was a "rush" release, impressed upon plaintiff when his condition was still such that he was not capable of comprehension.

 Plaintiff has presented no facts supporting the conclusory allegation of mutual mistake. Absent fraud, a unilateral mistake as to the effect of a release is not the kind of mistake which the law contemplates.[1]

In short, then, there being no equitable considerations impelling inquiry behind the literal language of the release, the court would be bound by *Brown, supra,* to conclude that the complete and unambiguous wording of the release effected the release of all joint tortfeasors and those in privity with them with rela-

1. In any event, the question here is not whether rescission is warranted, but the intended scope of the release.

tion to the events occurring near Cushing Airport on November 2, 1973.

■ Both parties herein apparently assume defendant is a joint tortfeasor. It is not. The tort alleged is independent both in kind and in time. The distinction is not one without difference, and was not, even under the strict common law rule. See generally 73 A.L.R.2d 403 § 6. Accordingly, *Brown* is not controlling; the question thus is whether the release reflects the intent to release this alleged tortfeasor.

■ The intent of the parties is the paramount consideration. *All American Bus Lines v. Saxon,* 197 Okl. 395, 172 P.2d 424 (1946). The rule that intent is to be determined from the four corners of the instrument and that any argument concerning the releasor's alleged subjective intent is unavailing, is the rule where the language of the instrument is unambiguous. *First National Bank in Dallas v. Rozelle,* 493 F.2d 1196 (10th Cir. 1974).

■ Language in an instrument is unambiguous only if it is reasonably and fairly susceptible to but a single meaning. *Major v. Bishop,* 462 F.2d 1277 (10th Cir. 1972).

■ The context is a motion for summary judgment and the court is obligated to view the facts and factual inferences in a light most favorable to the non-movant and most favorable to the existence of triable issues. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (10th Cir. 1975). In that light, it cannot be said as a matter of law that it is unreasonable to read the release as reflecting an intention to release only those whose acts or omissions related to the maintenance, operation or control of the plane at the time and place of the crash, but reflecting no intention to release a tortfeasor claimed to be liable by reason of a tort different in kind from and precedent to any possible negligence on the part of owner, pilot or airport personnel responsible for the particular flight.

■ Adding weight to this determination is the amount paid, a factor which may be considered as bearing on the question of intent. The law does not permit double recovery and a release given in an amount indicating compromise of all claims may be deemed in full settlement. Release given for considerably less than damage suffered may, however, raise a question of fact as to the intent of the releasor to accept the sum in full settlement even as to a claim against an unspecified and independent tortfeasor. *Biles v. Harris,* 521 P.2d 884 (Okl.Ct.App.1974). See also as a case in point, *Manos v. T.W.A., Inc.,* 295 F.Supp. 1166 (N.D.Ill.1968). Plaintiff herein alleges extensive burns and other injuries. He claims medical expenses for hospitalization, skin grafts and other care in the sum of $28,000, $18,000 of which has already been expended. He claims permanent disfigurement and disability, diminution in earning capacity and pain and suffering and prays substantial awards therefor.

It is alleged that the burn injuries were suffered because the defects in the aircraft's design and manufacture were unreasonably dangerous in that they resulted in the plane's becoming engulfed in flames and also precluded ready means of escape. It is thus not unreasonable to conclude that releasor intended to release only those who were negligent in the control of the plane at the time and place of the crash, but did not intend to release one whose alleged tort was the precedent defective design and/or manufacture of the craft itself.

■ The court concludes that whether the scope of the release was intended by the parties to reach as far as this defendant presents an issue of fact. Accordingly,

It is ordered that defendant's motion be and hereby is denied.