Roland MOSS and Lesa Ann Routh, Co-Administrators of The Estate of Bryan E. Moss, deceased; Roland Moss and Lesa Ann Routh, individually; Douglas Roy McBride, individually; and Jackie McBride, individually, Appellants,

v.

The CITY OF OKLAHOMA CITY; and Mansur, Daubert and Strella, Inc., an Oklahoma corporation, Appellees,

and

State of Oklahoma ex rel. Department of Transportation; and T.J. Campbell Construction Company, Inc., an Oklahoma corporation, Defendants.

No. 76982.

Supreme Court of Oklahoma.

May 23, 1995.

As Corrected May 25, 1995.

Rehearing Denied June 28, 1995.

R. Thomas Beadles, Bryce Johnson, Beadles, Johnson & Biscone, Oklahoma City, for appellants.

Richard C. Smith, Tina A. Hughes, Asst. Mun. Counselors, Oklahoma City, for appellee City of Oklahoma City.

Hugh A. Baysinger, Haven Tobias, James M. Reid, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, for appellee Mansur, Daubert and Strella, Inc.

LAVENDER, Justice.

The issue in this case is whether under 12 O.S.1991, § 832(H)(1), a part of the Uniform Contribution Among Tortfeasors Act (UCATA), all potential tortfeasors are discharged from liability to injured parties as a matter of law by virtue of a release signed by the injured parties which contains the names of persons to be released, along with other generalized broad language which, in essence, also purports to release the entire world from any and all claims. We hold in order to comply with the dictates of § 832(H)(1) a release given to a tortfeasor liable to an injured party will discharge other tortfeasors potentially liable for the same injury or wrongful death only if they are named or otherwise specifically identified in the release.

## FACTS AND PROCEDURAL HISTORY

In June 1989, Bryan Moss was a passenger in a vehicle driven by Larry Dale Chasteen which collided with a vehicle driven by appellant, Douglas Roy McBride. As a result of the collision, Chasteen and Moss were killed, and McBride was injured. After the accident, Moss's parents, appellants Roland Moss and Lesa Ann Routh, and McBride and his wife Jackie McBride (also an appellant), filed claims with the insurance carrier for Chasteen's parents (Lawrence and Barbara), Allstate Insurance Company. Appellants settled their claims against the Chasteens— the McBrides executing a release in September 1989 and Roland and Lesa Ann executing a release the next month. The claims were apparently settled for the Chasteen's policy limits, the McBrides receiving $10,000.00 and Roland and Lesa Ann $5,000.00 each. Both releases had the names of Lawrence and Barbara Chasteen handwritten in blank spaces provided on the pre-printed release forms. In addition, each release contained broad language purporting to release "any other person, firm or corporation charged or chargeable with responsibility or liability ... from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damage, loss or damages of any kind sustained ... in consequence of an accident that occurred on or about the 23 day of June, 1989...."

In April 1990, appellants sued appellees, the City of Oklahoma City and Mansur, Daubert and Strella, Inc., alleging negligent placement of a stop sign and negligent design and maintenance of the intersection where the accident occurred. Mansur, etc., who allegedly designed the intersection, and the City, who allegedly maintained it, separately moved for summary judgment. They contended the clear and unambiguous broad language contained in the releases discharged them from liability, even though the record appears undisputed they paid no consideration to appellants for the releases.[1]

In response to the summary judgment motions appellants argued § 832 should be interpreted so as to allow extrinsic evidence to show the true intent of the parties to the releases, which according to appellants was to release only the Chasteens and their insurer. Affidavits were submitted by all appellants which stated their intent was to release only the Chasteens and no other unnamed potential tortfeasor. An affidavit was also submitted by the claims adjustor for Allstate who stated the releases submitted to and signed by appellants were intended by Allstate to release only its insureds (the Chasteens) and Allstate, and no other potential tortfeasor.

---

1. The City also argued in its summary judgment motion that it owed no duty to appellants. The trial court did not decide the issue and the City does not urge it on appeal. We, accordingly, do not reach the issue.

The trial court sustained the motions for summary judgment, concluding as a matter of law the releases discharged all tortfeasors, both named and unnamed. In addition, the trial court decided extrinsic evidence would not be admissible to determine the intended scope of the releases, but they must be interpreted from their plain language. Appellants appealed on the issue of the intended scope of the releases. The Court of Appeals affirmed in a 2–1 decision. We granted certiorari to consider the effect of 12 O.S.1991, § 832, on a general release purporting to discharge a named tortfeasor and "any other person, firm, or corporation from any and all claims." [2]

## I.

The ancient common law rule, which was grounded upon a formalistic view that a release extinguished the cause of action to which it related, was that a release of one joint tortfeasor released all other joint tortfeasors, regardless of the intent of the parties. *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 343, 91 S.Ct. 795, 808, 28 L.Ed.2d 77 (1971), *reh. denied* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971); *Neves v. Potter*, 769 P.2d 1047, 1049–1050 (Colo.1989). In conformity with this precept, as a general rule, at common law, the release and discharge from all damages by an injured person acted to release all joint tortfeasors despite a statement in the release to the contrary. *See All American Bus Lines v. Saxon*, 197 Okla. 395, 172 P.2d 424, 428 (1946) (general rule recognized but not followed); *See also Bland v. Lawyer–Cuff Co.*, 72 Okla. 128, 178 P. 885, 890 (1918) (recognizing, but not following, unspecified earlier cases that were committed to doctrine that a release of one or more joint tortfeasors was a release of all). The rationale for the common law rule was that "where two or more tortfeasors acted in concert to cause an injury, the act of one became the act of all and a single cause of action, with each partic-

ipant being liable for the entire loss sustained by the plaintiff." *Neves, supra*, 769 P.2d at 1049. Critics of the common law rule characterized it as harsh or unfair "because it compels the plaintiff either to forego any opportunity of obtaining what it is possible to get from one defendant without suit, or to give up the entire claim against the other without full compensation." W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS § 49, at 333 (5th ed. 1984); *see also* J. CALAMARI AND J. PERILLO, CONTRACTS § 20–3, at 848 (3d ed. 1987) (criticism that release of one joint promisor or obligor releases the others).

In order to ameliorate the harshness of the old common law rule courts retreated from it in one way or another. PROSSER AND KEETON ON TORTS, *supra*, § 49, at 333–334. One such retreat was to recognize that an injured party could merely agree not to sue the tortfeasor settled with and embody this agreement in a covenant not to sue said tortfeasor, rather than entering into a release of the tortfeasor from further damages. *Id.* at 334. This Court has recognized the viability of a covenant not to sue and we have held a covenant not to sue is not a release at all and will not have the effect of releasing other potentially liable tortfeasors. *All American Bus Lines v. Saxon, supra*, 172 P.2d at 426–429. Another device used to ameliorate the harshness of the common law rule was that a release of one tortfeasor containing a reservation of rights against another would be recognized as a covenant not to sue the tortfeasor released and would not as a matter of law release other tortfeasors. *Id.*, at 425, *Second Syllabus; Harn v. Interstate Building & Loan Co.*, 77 Okla. 265, 188 P. 343, 346 (1920), *appeal dismissed* 255 U.S. 563, 41 S.Ct. 375, 65 L.Ed. 787 (1921).

Even in the absence of a reservation of rights this Court has allowed extrinsic evidence to explain a release which appeared to release only two of five defendants sued as

---

**2.** Appellants in their initial merit briefs also argue the releases are unenforceable because they are illegal and against public policy as being in violation of the Claims Resolution Act, 36 O.S.Supp.1986, §§ 1251–1260, now part of the Unfair Claims Settlement Practices Act, 36

O.S.Supp.1994, §§ 1250.1–1250.16. Appellants also assert on appeal the releases should be reformed on the basis of mutual mistake. In view of our disposition of this matter based on the UCATA it is unnecessary for us to reach either of these alternative arguments.

joint tortfeasors where the writing did not purport to disclose the complete agreement and when read in the light of attendant facts and circumstances it was apparent the release contained only part of the agreement entered into between the parties. *Safety Cab Co. v. Fair*, 181 Okla. 264, 74 P.2d 607, *First Syllabus* (1937). In allowing extrinsic evidence to show the parties' intent in *Safety Cab. Co. v. Fair* this Court also stated, however, such parol evidence could not be inconsistent with or repugnant to the intention of the parties as shown by the written instrument. *Id.*

As shown by the above cases, prior to the enactment of the UCATA, this Court had somewhat ameliorated the harshness of the common law rule. However, prior to enactment of the UCATA, we had also decided that where a release contained broad language like that at issue here seemingly releasing the entire world, our interpretation of the release would be limited to what we considered the plain language of the instrument and this Court held that another potential tortfeasor, who was not a party to the release or named therein was discharged from liability. *Brown v. Brown*, 410 P.2d 52 (Okla.1966). *Brown*, thus, evidences our most recent pronouncement on such a broadly worded release prior to enactment of the UCATA.

In addition to courts retreating from the common law rule, another method used to change or alter the old common law rule was by statute and in many jurisdictions this alteration took the form of enactment of the Uniform Contribution Among Tortfeasors Act of either 1939 and/or 1955 approved by the National Conference of Commissioners on Uniform State Laws, 12 U.L.A. 57–107 (1975). In 1978, Oklahoma adopted part of the Uniform Contribution Among Tortfeasors Act (UCATA), 12 O.S.1991, § 832(A)–(G). Generally, this initial adoption by the Oklahoma Legislature controls the rights of multiple tortfeasors in regard to contribution among the tortfeasors. This part of the UCATA had as its purpose overcoming and abolishing another troubling common law rule, one which generally prevented contribution among tortfeasors. *National Union*

*Fire Insurance Company v. A.A.R. Western Skyways, Inc.*, 784 P.2d 52, 57 (Okla.1989); *See also National Trailer Convoy, Inc. v. Oklahoma Turnpike Authority*, 434 P.2d 238, 239, *First Syllabus* (Okla.1967) (at common law joint tortfeasors, as a general rule, have no right of contribution among themselves).

In 1980 the Oklahoma Legislature amended the UCATA by adding subsection (H)(1) and (2) to § 832. As pertinent here subsection (H)(1) concerns when a release or similar document will discharge from liability tortfeasors who are not parties to the release. Subsection 832(H)(1) and (2) provides *in toto* as follows:

**H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:**

**1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide;** but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor. (emphasis added)

Although we had the opportunity to construe the contribution aspects of § 832(A)–(G) in *National Union Fire Insurance Company, supra* and we have considered the non-highlighted portion of § 832(H)(1) in respect to the amount to be deducted from a jury verdict against a non-settling tortfeasor when another tortfeasor has previously settled with an injured party [*Price v. Southwestern Bell Telephone Co.*, 812 P.2d 1355 (Okla.1991)], prior to this case we have not been presented with a case calling for construction of the effect of § 832(H)(1) on a release purporting to release named tortfeasors, coupled with broad boilerplate language seemingly releasing all other persons, firms or corporations from any and all claims. Although the question presented is, thus, one of first impression for this Court, numerous courts throughout the nation have confronted it pre-

viously. We now look to these other courts in an effort to assist us in our interpretation of the UCATA and its effect on these releases.

## II.

■ A review of the jurisdictions that have considered the effect of the UCATA on general releases containing language similar to that of the releases signed by appellants reveals that three different views have emerged.[3] Some courts have taken the view that the release of a named tortfeasor and all other persons, firms or corporations from any and all claims, etc., operates as a complete bar to a plaintiff seeking to bring an action against an unnamed tortfeasor. *See e.g. Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764 (1961). This view is referred to as the "complete bar", "flat bar" or "absolute bar" rule. The complete bar approach was taken by the United States Court of Appeals for the Tenth Circuit in *Mussett v. Baker Material Handling Corp.,* 844 F.2d 760 (10th Cir.1988), in a case involving a release similar to the ones here. Finding no ambiguity in the release, the Tenth Circuit held "[w]hen a release is unambiguous, the court must interpret the contract as a matter of law and is precluded from looking beyond the contract." *Id.* at 762. The Tenth Circuit saw the UCATA as evidencing no change in Oklahoma's law and the court was of the view *Brown v. Brown, supra,* still controlled the interpretation of such releases. *Mussett, supra,* 844 F.2d at 762.

The complete bar rule is based on the theory that the terms of a general release, purporting to release "all other persons, firms or corporations," satisfies the requirements of the UCATA, which provides that a release will not discharge a tortfeasor from liability "unless its terms so provide." *Hasselrode v. Gnagey, supra,* 172 A.2d at 765.[4] The rule gives a broad construction to both

the "so provide[s]" language of the statute and the "any other person, firm, [etc.]" language of the release. *Sims v. Honda Motor Co., Ltd.,* 225 Conn. 401, 623 A.2d 995, 999 (1993). Courts applying this rule adhere to traditional contract principles and require that the intent of the parties who executed the release "be gleaned from the language of the release." *Hasselrode v. Gnagey, supra,* 172 A.2d at 765. Consequently, complete bar rule jurisdictions generally do not allow the admission of extrinsic evidence to determine intent where the terms of the release are unambiguous.

The second view is that a release like that at issue will discharge unnamed tortfeasors only if the parties who negotiated the release intended it to do so. *See e.g. Sims v. Honda Motor Co., Ltd., supra; Neves v. Potter, supra.* Courts adopting this view, known as the "intent" rule, look beyond the four corners of the release and allow consideration of extrinsic or parol evidence to determine the intent of the parties. *Sims v. Honda Motor Co., Ltd., supra,* 623 A.2d at 1002–1004; *See also Moore v. Missouri Pacific R.R.,* 299 Ark. 232, 773 S.W.2d 78, 80 (1989) (explanation of rule). Courts adopting the intent rule have justified the admission of extrinsic evidence on several theories. Some have concluded that the existence of pre-printed language purporting to release unnamed tortfeasors along with handwritten names of those specifically intended to be released creates at least a latent ambiguity which justifies the admission of extrinsic evidence. *See e.g. Hurt v. Leatherby Ins. Co.,* 380 So.2d 432, 434 (Fla.1980). Others rely on the view that extrinsic or parol evidence can be used to vary or contradict the release instrument when the litigation is between a party to the contract and a stranger thereto, i.e. a nonparty tortfeasor. *Neves v. Potter, supra,* 769 P.2d at 1054; *Lemke v. Sears, Roebuck & Co.,* 853 F.2d 253, 255 (4th Cir.1988) (apply-

---

3. For a fairly comprehensive compilation of cases in the area one should review, Anne M. Payne, Annotation: *Release of One Joint Tortfeasor as Discharging Liability of Others Under Uniform Contribution Among Tortfeasors Act and Other Statutes Expressly Governing Effect of Release,* 6 A.L.R.5th 883 (1992).

4. The language of the UCATA adopted in Pennsylvania provided that other tortfeasors were not discharged "unless the release so provides", rather than "unless its terms so provide", the operative language in § 832(H)(1). We find this slight difference in wording not relevant to our discussion.

ing Virginia law). Another approach used to justify admission of extrinsic evidence has been to carve out a narrow exception to the parol evidence rule based on the unique nature of general releases. *Sims v. Honda Motor Co., Ltd., supra,* 623 A.2d at 1002–1003.

The third view applied by courts in interpreting similar releases is to construe the language of the UCATA "unless its terms so provide" as placing a requirement that for a release given to one tortfeasor to discharge other potential tortfeasors from liability the release must name or otherwise specifically identify such other tortfeasors. *See e.g. Moore v. Missouri Pacific R.R., supra; Aid Ins. Co. v. Davis County,* 426 N.W.2d 631 (Iowa 1988); *Alsup v. Firestone Tire & Rubber Co.,* 101 Ill.2d 196, 77 Ill.Dec. 738, 461 N.E.2d 361 (1984); *Beck v. Cianchetti,* 1 Ohio St.3d 231, 439 N.E.2d 417 (1982).[5] This view is known as the "specific identity" rule. Courts adopting it reject the notion that general broad boilerplate language like that contained in the instant releases is sufficient to act as a discharge of these other tortfeasors. *Alsup v. Firestone Tire & Rubber Co., supra,* 461 N.E.2d at 363–364. These courts recognize that the legislative intent was to do away with the common law rule which often resulted in an unwitting discharge of other tortfeasors and was to require some semblance of specificity before a non-settling tortfeasor would be discharged by a release given solely to a settling tortfeasor. *Id.; Beck v. Cianchetti, supra,* 439 N.E.2d at 420.

After considering these various approaches it is our opinion the specific identity rule is the one intended by the Legislature and the one which will best carry out the legislative purpose and design of the UCATA. For that reason we adopt it as the rule in Oklahoma.

### III.

■ The primary goal of statutory construction is to ascertain and follow the intention of the legislature. *Ledbetter v. Alcoholic Bev. Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988). We are persuaded that the specific identity rule was the one intended by the Legislature and is the rule which will most effectively advance the objective of 12 O.S.1991, § 832(H)(1) in regard to the issue of whether a release of one or more tortfeasors specifically named will also release other potential tortfeasors under broad boilerplate language seemingly releasing the entire world. As noted above, § 832 was modeled after the UCATA which was drafted to eliminate the inequities of the common law rule. Specifically, the UCATA was aimed at "preserving an unknowing injured party's opportunity to seek relief from responsible tortfeasors and a policy against enforcing an injured party's involuntary discharge of responsible tortfeasors." *Sims v. Honda Motor Co., supra,* 623 A.2d at 999; *Alsup v. Firestone Tire & Rubber Co., supra,* 461 N.E.2d at 364.

In our view the plain meaning of the phrase "unless its terms so provide", coupled with the preceding language of § 832(H)(1) that a release "does not discharge any of the other tortfeasors from liability" clearly contains an expression of legislative intent that such other tortfeasors are not discharged unless they are either named or otherwise specifically identified in the release. In our view, only in such event did the Legislature intend for these other non-settling potential tortfeasors to gain the benefit of a discharge from liability to the injured party via a release to which they were not parties and for which they paid no consideration. The rationale for adopting the specific identity rule is that such an interpretation is necessary to carry out the intention of the Legislature. In *Moore v. Missouri Pacific R.R., supra,*

5. We note that we recognize the slight differences in wording of the operative language in three of the cases cited in the text. The Arkansas statute at issue in *Moore v. Missouri Pacific R.R.,* 299 Ark. 232, 773 S.W.2d 78, 79 (1989), provided other tortfeasors are not discharged "unless the release so provides"; the Iowa statute at issue in *Aid Ins. Co. v. Davis County,* 426 N.W.2d 631, 632 (Iowa 1988), provided other tortfeasors are not discharged by a release given to another tortfeasor "unless it so provides"; and the Ohio statute at issue in *Beck v. Cianchetti,* 1 Ohio St.3d 231, 439 N.E.2d 417, 419 (1982), provided other tortfeasors are not discharged by a release given to another tortfeasor "unless its terms otherwise provide". We conclude these slight differences in wording have no impact on our discussion or ultimate disposition of this matter.

the Arkansas Supreme Court reasoned as follows:

Clearly, it was the intention of the Arkansas Legislature in enacting Ark.Code Ann. § 16–61–204 to abrogate the common law rule that a release of one tortfeasor released all other tortfeasors jointly liable for the occurrence, thereby retaining the liability of joint tortfeasors. Accordingly, we must construe the language of § 16–61–204, "unless the release so provides," in a manner that best conforms with the objective of the legislature in enacting the code provision.

*Id.*, 773 S.W.2d at 82.

The Illinois Supreme Court advanced a similar rationale for adopting the specific identity rule. In *Alsup v. Firestone Tire & Rubber Co., supra*, the court concluded:

The legislature intended to abolish the common law rule that produced an involuntary discharge of joint tortfeasors. Section 2(c) states that a release will not operate to "discharge any of the other tortfeasors from liability for the injury * * *." We do not consider that the modifying language that follows, *i.e.*, "unless its terms so provide," should be interpreted to allow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms. The legislature surely was aware of the criticism that the common law rule often operated to violate the intentions of persons giving releases. We consider that the legislature's intendment was that [ ] under section 2(c) a release was not to discharge "other tortfeasors" from liability unless they were designated by name or otherwise specifically identified.

*Id.*, 461 N.E.2d at 364.

■ Based on the reasoning quoted above, we conclude that boilerplate language referring to all other persons, firms, and corporations is insufficient to identify the tortfeasors to be discharged. *See e.g. Moore v. Missouri Pacific R.R., supra*, 773 S.W.2d at 82; *Beck v. Cianchetti, supra*, 439 N.E.2d at 420. In adopting the specific identity rule, we reject both the complete bar and intent rules. We find that the complete bar rule fails to effectively achieve the objectives of the UCATA

and fails to recognize the Legislature intended to abolish the old common law rule and abrogate the view espoused by this Court in *Brown v. Brown, supra*. Under the complete bar rule, an injured party may unknowingly surrender a cause of action which was never fully compensated simply because a boilerplate release was used. Such a construction would undermine the legislative effort to protect against unknowing or involuntary discharges of potential tortfeasors. We are in agreement with the critics of this rule who have recognized that it perpetuates the legacy of the common law rule, releasing unnamed tortfeasors even where contrary to the intent of the parties who executed the release or where the injured party may not have received full compensation for his or her injuries. *Neves v. Potter, supra*, 769 P.2d at 1051.

The Illinois Supreme Court criticized giving literal effect to such broad releases as follows:

If literal effect were given to every use of a general release form and "all other persons, firms, and corporations," as appears here, were to be discharged, an important purpose of the [UCATA] would be thwarted by the unintended release of persons who were strangers to the release contract. The common law rule released joint tortfeasors by operation of law. By the general release there would be, on the ground of contract, an unwitting discharge of joint tortfeasors.

*Alsup v. Firestone Tire & Rubber Co., supra*, 461 N.E.2d at 364.

The Colorado Supreme Court added a similar criticism.

The "absolute bar" rule violates the spirit of the UCATA and frustrates section 13–50.5–105's express goal of retaining the liability of joint tortfeasors. It provides joint tortfeasors, who are neither signatories of nor contributors to a release, a windfall benefit for which they did not bargain.

*Neves v. Potter, supra*, 769 P.2d at 1052. Further, as leading commentators have said, "[t]he only desirable rule would seem to be that a plaintiff should never be deprived of a

cause of action against any wrongdoer when the plaintiff has neither intentionally surrendered the cause of action nor received full compensation." (citations omitted) PROSSER AND KEETON ON TORTS, *supra*, § 49, at 335.

We also reject the intent rule. While this rule would prevent an injured party from unknowingly surrendering a cause of action, it is our opinion that the language of the UCATA does not lend itself to such a construction. Nowhere does the language of § 832(H)(1) indicate the Legislature meant to change the parol evidence rule or carve out a special exception to it in regard to general releases. As noted above, the legislative intent, given the beneficial purpose of § 832(H)(1) to protect against the unknowing or involuntary discharge of potential tortfeasors, is that a release is not to discharge other tortfeasors unless they are designated by name or otherwise specifically identified. We are also of the view that the intent rule does not lend itself to easy application, but instead would require evidentiary hearings in virtually every case where a general boilerplate release was used. We simply do not believe the Legislature intended such a result and, without some indicia of legislative intent for such a view, which we do not find in the UCATA, it would be improper for us to sanction such a construction.

Thus, we join those courts that hold for a general release like those present here to discharge from liability potential tortfeasors not parties to the release the language contained in the release must expressly designate by name or otherwise specifically identify such other potential tortfeasors. *See e.g. Beck v. Cianchetti, supra,* 439 N.E.2d at 420; *Moore v. Missouri Pacific R.R., supra,* 773 S.W.2d at 82. Such is the requirement contained in § 832(H)(1) and broad boilerplate

language like that contained in the releases involved here is not sufficient.[6]

## IV.

In granting appellees' motion for summary judgment, the trial court relied on the Tenth Circuit decision in *Mussett v. Baker Material Handling Corp., supra.* In *Mussett*, on facts similar to the instant case, the Tenth Circuit held that the enactment of the UCATA did not prevent an injured party from releasing unnamed tortfeasors by executing a general release. *Id.,* 844 F.2d at 762. The Tenth Circuit based its decision on *Brown v. Brown, supra,* where this Court, as noted above, interpreted a general release as a matter of law and found it effective against an unnamed tortfeasor. The Tenth Circuit concluded that although *Brown* was decided before the adoption of the UCATA, it still controlled the interpretation of the release at issue in *Mussett* and § 832(H)(1) did not alter the law as it stood when *Brown* was decided.

Based on our analysis today, it is apparent that *Mussett v. Baker Material Handling Corp., supra,* was wrongly decided and that the Legislature intended to alter the view of this Court espoused in *Brown v. Brown, supra,* a case that did not consider the effect or the intent of the Legislature in adopting the UCATA. As previously noted, the UCATA was intended "to abolish the common law rule that produced an involuntary discharge of joint tortfeasors." *Alsup v. Firestone Tire & Rubber Co., supra,* 461 N.E.2d at 364. In light of our decision that the specific identity rule best evidences the legislative purpose embodied in § 832(H)(1) of the UCATA it is also apparent that the trial court and Court of Appeals erred in granting and upholding, respectively, summary judgment in favor of appellees because the releases at issue neither named or otherwise specifically identi-

---

**6.** In adopting the specific identity rule we reject criticism of the rule by those who assert it is inequitable for the reason it does not protect the rights of the settling tortfeasor to contribution from non-settling potential tortfeasors. *See e.g. Neves v. Potter,* 769 P.2d 1047, 1053 (Colo.1989). The criticism originates because under 12 O.S. 1991, § 832(D) of the UCATA (or provisions similar to it), a settlement that does not extinguish the liability of other tortfeasors bars the settling

tortfeasor from obtaining contribution from the unreleased tortfeasors. *Neves v. Potter, supra,* 769 P.2d at 1053. In our view, the criticism is unfounded. All a settling tortfeasor has to do to protect this contribution right is to insist that these other potential tortfeasors (i.e. non-settling) be either named or specifically identified in the release, something we do not view as a laborious task.

fied appellees. Thus, the releases did not have the effect of releasing these other potential tortfeasors. Summary judgment was, therefore, improper.

Accordingly, the opinion of the Court of Appeals is **VACATED** and the judgments of the trial court granting summary judgment to appellees are **REVERSED** and this matter is **REMANDED** to the trial court for further proceedings.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, SIMMS, OPALA, SUMMERS and WATT, JJ., concur.

HARGRAVE, J., dissents.