## BLAND v. LAWYER-CUFF CO.

*No. 8144—Opinion Filed Feb. 12, 1918.*

On Rehearing, March 11, 1919.

(178 Pac. 885.)

1. **Libel and Slander—"Conditionally Privileged Communication"—Question for Jury—Evidence.**

A "conditionally privileged communication" is one made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty to perform, and which, without the occasion upon which it is made, would be defamatory and actionable; and where there is no dispute as to the circumstances under which a publication was made, it is a legal question for the court to determine whether the occasion is such as to bring the alleged defamatory publication within the protection afforded to "conditionally privileged communications," but whether the act which gives the publication the privileged character claimed for it is established by the evidence is a question for the jury, and where the evidence is conflicting it is proper for the court to instruct the jury as to what facts constitute a conditionally privi-

leged communication, and leave them to say whether those facts are proven.

## 2. Release—Joint Tort-Feasors.

An acknowledgement by the plaintiff of satisfaction against one of two defendants sued as joint tort-feasors will not release the other unless such instrument shows that it was intended to have such effect.

(Syllabus by West, C.)

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Suit by the Lawyer-Cuff Company against W. F. Bland and R. N. McConnell. Cause dismissed as to defendant McConnell, and judgment for plaintiff against defendant Bland, and he brings error. Affirmed.

Chas. H. Garnett, for plaintiff in error.

Grant Stanley, for defendant in error.

Opinion by WEST, C. This was a suit instituted by Lawyer-Cuff Company, a corporation, against R. N. McConnell and W. F. Bland in the district court of Oklahoma county on the 9th day of January, 1914, for damages for alleged libel. Four causes of action were alleged in plaintiff's petition. A demurrer, however, was sustained as to the first cause of action. The plaintiff, in substance, in each of the remaining causes of action. alleged that the plaintiff was engaged in the mercantile business at Maud, in this state, with a capital stock of $50,000, and that in conduct of its business it was necessary to obtain credit; that it was a solvent concern, and had a good reputation, and that McConnell operated a law office, collection agency. and reporting agency at Oklahoma City, and defendant R. N. McConnell was engaged in sending out reports as to the financial condition and responsibility of persons engaged in the mercantile business in different towns of Oklahoma, including Maud, and that Bland was employed by McConnell for said purpose; alleged that on the 10th day of May, 1913, defendants falsely, wickedly, and maliciously wrote a letter concerning plaintiff to the Huiskamp Bros., at Keokuk, Iowa, as follows to wit:

"Oklahoma City, Okla., May 10th, 1913.
"Huiskamp Bros. Co., Keokuk, Iowa:

"Gentlemen: In re Lawyer-Cuff & Co., Maud, Okla. We are advised to-day, on good authority, that this concern is getting in extremely hard shape financially, and something is liable to happen at most any time. If you are interested, we suggest that you take immediate steps to collect your money. Please treat this information as confidential.

"Yours very truly, R. N. McConnell."

And did on the 20th day of May, 1913, falsely, wickedly, and maliciously write a letter and mail to, and say of and concerning said plaintiff to, the Huiskamp Bros. Company, of Keokuk, Iowa, as follows, to wit:

"Oklahoma City, Okla., May 20, 1913.
"Huiskamp Bros. Company, Keokuk, Iowa:

"Gentlemen: In re Lawyer-Cuff Company, Maud, Oklahoma. Yours of the 16th received. We know nothing definite regarding the financial condition of this concern, although we have heard several rumors recently. One is to the effect that they are making preparation to pull off a good deal; whether there is anything in this, of course, we do not know. You can take it for what it is worth, and trust you will hold it in strict confidence.

"We have known both Lawyer and Cuff for the last four or five years, and Cuff especially. We have a suit pending against him now for the Brown Shoe Co. Cuff is a grand rascal, and the trade here has but little confidence in him.

"Should we hear anything definite, will be glad to advise you.

"Very truly yours,

"W.F.B.—C.H. R. N. McConnell."

And did on the 7th day of September, 1913, falsely, wickedly, and maliciously write a night lettergram, and send to the Huiskamp Bros Company, of Keokuk, Iowa, saying of and concerning said plaintiff as follows, to wit:

"Oklahoma City, Okla., Sept. 7th, 1913.

"i ch ra 14 NL

"Huiskamp Bros. Co., Keokuk, Iowa:

"Lawyer-Cuff Co. bad shape checks going to protest bankruptcy. Better look after claim.

"742AM8th R. N. McConnell."

And did on the 10th day of September, 1913, falsely, wickedly, and maliciously write a letter and mail to, and say of and concerning said plaintiff to, the Huiskamp Bros. Company, of Keokuk, Iowa, as follows, to wit:

"Oklahoma City, Okla., Sept. 10th, 1913.
"Huiskamp Bros. Co., Keokuk, Iowa:

"Gentlemen: In re Lawyer-Cuff Co., Maud. We wired you the other day that this concern was failing in condition. We are advised recently that a large number of their checks have been going to protest and numerous claims are in the hands of attorneys for collection. We are also advised that four or five suits have been filed against them, and that the large creditors are upon the ground, demanding security.

-"We understood some time ago that you were interested, and for that reason we wired you as we did. We did not give you this information in order to secure your claim, but desire to post you, so that if you still have a large claim against this firm you can take steps to secure yourself.

"Yours very truly,

"WFB / JC . R. N. McConnell."

And did on the 16th day of September, 1913, falsely, wickedly, and maliciously write a letter and mail to, and say of said plaintiff to the Huiskamp Bros. Company of Keokuk, Iowa, as follows, to wit:

"Oklahoma City, Okla., September 16th, 1913. "Huiskamp Bros., Keokuk, Iowa:

"Gentlemen: In re Lawyer-Cuff Co., Maud. Yours of the 12th received and fully noted. Wi l say that there are rumors going around constantly regarding the insolvency of this firm and the likelihood of their being forced into bankruptcy at any time.

"We were advised to-day by local attorneys that they were filing three or four different suits against this firm.

"Now we understand that your claim is large, and that you, of course, would not want to take any steps that would jeopardize your interest; however, if you want us to go to Maud and make a full and complete investigation for you, will be glad to do so for $10 per day and expenses.

"Yours very truly,

"W.F.B. / JC. R. N. McConnell."

And alleged that plaintiffs were injured in their good name, fame, and credit, and brought into public scandal, infamy, and disgrace, and their credit destroyed. to the damage of plaintiffs in the sum of $10,000.

The other causes of action are practically the same except as to the libelous communications. which were based upon two other annoymous letters, which are as follows:

"9—22—'13.
"E. Walker C. G. Co., St. Louis, Mo.:

"Gentlemen: If Lawyer-Cuff Company, Maud, Oklahoma, owe you anything, you had better get it now. The big steal' will soon come off. The Co. is a corporation. In the last few months the individual members of the Co. have bought hundreds of acres of land taking title in own names. When the Co. goes broke, as it surely will, Cuff and Lawyer Company will have plenty of land but the Lawyer-Cuff Company will have nothing but a badly run down stock and $50,000 worth of poor accounts. This is their scheme. Do as you think best if they owe you.

"I know your company well as I bought a great many goods from you in Mo. where I once owned a big store. I think a great deal of you, hence this gentle 'tip.' I was in Maud yesterday and got next to this whole rotten fraud.

"Yours truly, An Old Customer."

"9—22—'13.

"John Deere Plow Co., Oklahoma City, Okla.

"Gentlemen: Take a gentle 'tip' from father and get your money from Lawyer-Cuff Co., Maud. They will be in bankruptcy in 10 days. This is no rumor. I know the whole rotten deal.

"Yours truly,

"An Old Satisfied Customer."

Defendants answered denying the material allegations pleaded; admitted that McConnell was engaged in the business alleged, and that Bland was employed as alleged; pleaded the truth of the statement in the first cause of action; pleaded that it was a privileged communication; and denied the writing of the anonymous letters. The plaintiff dismissed his cause of action against the defendant R. N. McConnell, and the cause proceeded to trial to a jury as against the defendant W. F. Bland. Judgment was rendered for $6,000 actual damages and $4,500 exemplary damages against defendant W. F. Bland, and cause is brought here for review.

The parties will be designated as they appeared in the court below.

Defendant complains of the trial court below under five assignments, as follows:

"First. The trial court erred in refusing to hold that the communications to Huiskamp Bros. Co. were privileged. and in refusing to give defendant's requested instruction No 2 to that effect, and in giving instruction No. 6 of the general charge to the jury, in which the question of whether or not said communications were privileged was submitted to the jury.

"Second. The trial court erred in giving instruction No. 6 of the general charge to the jury.

"Third. The trial court erred in refusing to give instruction No. 1 or instruction No. 3, requested by the defendant.

"Fourth. The trial court erred in that the judgment. rendered is not supported by the evidence and is contrary to law.

"Fifth. The trial court erred in overruling the motion of defendant for a new trial."

We deem that these assignments of error may be discussed under three heads: (1) As to whether or not the court erred in giving instruction No. 6 of the main charge, and in refusing to give instructions Nos. 1 and 3.

Instruction No. 6 is as follows:

" 'A privileged communication' is one made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty. and which contains matter which, without the occasion upon which it is made, would be defamatory or actionable.

"And in this connection you are further instructed that if you find and believe from the evidence that the relation of attorney and client existed between Huiskamp Bros. Co. and R. M. McConnell, or of the defendant W. F. Bland, and that the communica tions set forth in the second cause of action in plaintiff's petition are privileged communications within the above definition, then the law does not presume malice therefrom, and the burden is upon the plaintiff to prove express malice on the part of the defendant in writing said communication."

Defendant testified that for years McConnell's office had been doing business with Huiskamp Bros., had been furnishing them with confidential reports and had been attending to collection business for them, and that this relation existed at the time of the publication of the letters complained of in plaintiff's second cause of action. A witness by the name of Mathews testified that he was the treasurer of Huiskamp Bros. Company, that they had received letters addressed to them, and that it had been the custom of McConnell's office to write or wire them if they felt they were interested in customers at different times, or if they though their firm's interests were involved, and to seek claims and accounts against customers in a weakened condition; that during the last year or two they had only had a limited relation with the firm. Previous to that time Mr. McConnell had represented them quite liberally in Oklahoma.

On cross-examination this witness testified as follows:

"Q. From the business relations of your house with him was it not expected by your company that if he knew of any information that would be interesting to you in regard to the financial situation of any of your customers that he would report same to you? A. Up to two years ago he did this very generally, and I would imagine that he has more or less generally kept us advised where he thought our interests jeopardized.

"Q. Didn't you expect him to do that as a part of your business relations, if he felt it to be the case? A. No, not definitely; but I thought it was his custom to inform us. in connection with other wholesalers whom he at times represented, and that if he felt we were involved and interested that he would give us notice, if not inconsistent with other creditors' interests."

Defendant insists that the communications were privileged, as a matter of law, under the evidence.

In the case of Hubbard v. Cowling, 36 Okla. 603, 129 Pac. 714, the syllabus is as follows:

1. "A 'conditionally privileged publication' is a publication made on the occasion which furnishes a prima facie legal excuse for the making of it, and which is privileged, unless some additional fact is shown which so alters the character of the occasion as to prevent it furnishing a legal excuse."

2. "A 'privileged communication' is one made in good faith, upon any subject-matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable."

3. "Where there is no dispute as to the circumstances under which a publication was made, it is a legal question for the court to determine whether the occasion is such as to bring the alleged defamatory publication within the protection afforded to privileged communications. But whether the facts which give the publication the privileged character claimed for it are established by the evidence is a question for the jury. Accordingly where the evidence is uncertain and conflicting, it is proper for the court to instruct the jury as to what facts constitute a privilege, and leave them to say whether the facts are proved."

4. "After it is shown that the alleged slander is privileged, the burden rests upon the plaintiff to show express malice."

5. "Words used in an alleged slanderous communication are to be taken in their most natural and obvious sense, and in which those to whom they are spoken will be sure to understand them."

In case of German-American Ins. Co. v. Huntley, 62 Okla. 39, 161 Pac. 815, the first, second, fourth, and fifth paragraphs of the syllabus are as follows:

1. "By section 4958, Rev. Laws 1910, two classes of privileged publications are recognized: (1) Those where the occasions designated, regardless of malice, constitute an absolute privilege and preclude recovery of damages; and (2) those in which the circumstances of the defamatory publication, together with the testimony, rebut the presumption of malice, and afford a qualified privilege."

2. "The word 'fact' is used in the fourth paragraph of said section in its ordinary sense to denote the act, the thing done, the circumstance, the publication itself."

4. "In an action for libel, where plaintiff has established that defamatory matter has

been published by the defendant concerning him, he is entitled to recover, unless the 'fact' (the publication itself) and the testimony rebut the presumption of malice. The burden of adducing evidence to rebut such presumption is upon the defendant."

5. "If the fact and the testimony rebut the presumption of malice, the burden then rests upon the plaintiff to show express malice in order to recover."

In the body of the opinion the court uses the following language:

"The statute (section 4958, Rev. Laws 1910) provides:

"'Privileged Communication Defined.—A privileged publication or communication is one made:

"'First. In any legislative or judicial proceeding or any other proceeding authorized by law.

"'Second. In the proper discharge of an official duty;

"'Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law; or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticised.

"'In all cases of publication of matter not privileged under this section, malice shall be presumed from the publication, unless the fact and the testimony rebut the same. No publication which, under this section, would be privileged, shall be punishable as libel.'

"It seems clear that the legislative intention was to recognize two classes of privileged publications, viz.: (1) Those where the occasions designated, regardless of malice, constitute an absolute excuse and preclude recovery of damages; and (2) those in which the circumstances of the defamatory publication, together with testimony. rebut the presumption of malice, thus affording a conditional excuse."

And further on in the opinion the following language is used:

"Thus it would seem that, when plaintiff established that the defamatory matter was published by defendant concerning him, he had satisfied the requirements of the statute, and was entitled to recover, unless defendant, in addition to the circumstances of the publication (the fact), offered testimony showing that the criminatory charge was based upon reasonable cause and bona fide believed to be true; for without such testimony the presumption of malice was not rebutted. Notwithstanding the defendant failed to allege in its answer that the criminatory charge which it admitted publishing was made in good faith and believed to be true, yet it was permitted on the trial to adduce evidence of the circumstances surrounding the fire which destroyed the insured property, and of current rumors in regard to plaintiff's connection with such fire, for the purpose of rebutting the presumption of malice, and thus bringing the communication within the protection afforded publications qualifiedly privileged under the rule above announced. Whether such testimony established good faith, in that the charge was bona fide believed to be true, and thus rebutted the presumption of malice, was a question of fact, to be determined by the jury. By virtue of the statutory provisions, supra, the burden of evidence in this regard was upon the defendant. This requirement, it seems to us. provides the natural and logical order of proof in such a case; for otherwise plaintiff would be compelled to anticipate, and to establish his cause of action, disprove all the facts and circumstances upon which defendant could rely to show probable cause, bona fide belief in the truth of the charge, proper motive, and the use of the publication for the reason and purpose which alone render it privileged. In Hubbard v. Cowling, supra, it was held that:

"'After it is shown that the alleged slander is privileged, the burden rests upon the plaintiff to show express malice.' See Tuohy v. Halsell [35 Okla. 61, 128 Pac. 126, 43 L. R. A. (N. S.) 323, Ann. Cas. 1916B, 1110], supra.

"It is undoubtedly the correct rule, where the circumstances and the testimony rebut the presumption of malice, that then the burden is upon the plaintiff to show express malice in order to recover.

"The 'fact'—i. e., the circumstances of the publication in the instant case—was undisputed, but the good faith of defendant, being controverted, was a question for the jury to determine. If the testimony established that the defamatory matter was bona fide believed to be true from reasonable cause, and the occasion was employed from a proper motive, then the publication was privileged. and such privilege afforded a complete defense to plaintiff's cause of action. In Newell on Slander and Libel it is stated:

"'Section 500. When the court holds the communication to be entitled to the privilege, the jury should be instructed to consider and determine whether or not the defendant used the occasion for the sole purpose which conferred the privilege upon his statement; and if the jury find from the surrounding circumstances, as shown by the evidence, that he did so use it solely for such reason and purpose, the verdict will be for the defendant. But if, on the other hand, they find that he employed the occasion in bad faith, to gratify or to further

some indirect or malicious motive, or for some improper reason, the verdict will be for the plaintiff. Where the communication is entitled to the privilege, the burden of proof is then upon the plaintiff to show actual malice in the sense of oblique design or bad faith.' "

It would therefore appear, under the rule announced in this jurisdiction, that paragraph 6 of the court's main charge, when considered in connection with the rest of the charge, is not subject to the criticism directed against it.

The court in instructing the jury defined what a "privileged communication" was, and further instructed that if they should find and believe from the evidence that the relation of attorney and client existed between Huiskamp Bros. Company and McConnell at that time, and that the communications set forth in second cause of action in plaintiff's petition are privileged communications within the above definition, then the plaintiff could not recover, unless he proved express malice on the part of the defendant in writing said communication. This we think is a correct statement of the law. If the relation of attorney and client existed, and if said communiction complained of were made in good faith by the said defendant Bland, believing that he had a duty to perform, and believing under the circumstance it was his duty to report the condition of the plaintiff to Huiskamp Bros. considering their previous business relation, and that in so doing he acted in good faith in making these communications. then, under the statutes in force in this state and the decisions construing the same, it would have been a conditionally privileged communication, and before the plaintiff could have recovered it would have had to have shown malice on the part of the defendant in the sense of oblique design or bad faith; but as to whether or not this relation existed, and as to whether or not the communication was made in good faith, was a matter for the jury to determine under proper instructions from the court, and this they did, contrary to the contention of the defendant. And inasmuch as the communication complained of was not unqualifiedly privileged, then the finding of the jury upon this issue is conclusive upon this court.

The third assignment of error, which goes to instruction No. 1, which was a requested instruction for a verdict in favor of defendant, which is not seriously argued in plaintiff's brief, and under all the evidence in this cause, the court would not have been justified in giving the same. We deem it unnecessary to notice this instruction further.

Requested instruction No. 3 is as follows:

"You are instructed that the plaintiff settled and dismissed, with prejudice, its action for libel upon the same communication pleaded and set forth in its petition herein against the First National Bank of Maud, Oklahoma, in consideration of the settlement of a claim or suit of the First National Bank of Maud, Oklahoma, against J. E. Lawyer, and of a foreclosure suit of R. J. Edwards against J. E. Lawyer to foreclose a mortgage upon real estate in the town of Maud, which was occupied and used by the plaintiff company in its business; and also that the plaintiff has settled and dismissed its cause of action upon the communications set forth in plaintiff's petition against R. N. McConnell for a consideration and sum of $300.00; and that, therefore, whatever damages, if any, the plaintiff may have suffered by reason of the alleged libelous communications set forth in its petition have been fully satisfied, and you must return a verdict in favor of the defendant."

It appears from the evidence that on the day of trial or the day before cause of action against the First National Bank of Maud and R. N. McConnell was dismissed, and the cause proceeded against their codefendant. W. F. Bland, and it is contended by the defendant that the receipt and satisfaction of the claim against the First National Bank and McConnell, his codefendants, was a complete release of himself and an absolute bar to the right of plaintiff to maintain this action or to recover any judgment against him. We do not coincide with this view of the case. An acknowledgment by the plaintiff of satisfaction against one or two joint tort-feasors is not a bar to the recovery of damages against the other was said in the case of Carey Edens v. John J. Fletcher et al., reported in 79 Kan. 139, 98 Pac. 784, 19 L. R. A. (N S.) p. 618. The following language is used:

"An acknowledgment by the plaintiff of satisfaction against two of several defendants, where sued as joint wrongdoers, will not release the others, where the instrument offered to show such release shows that it was not intended to have such effect."

"Where such acknowledgment and satisfaction contains an express reservation of the right to proceed against the other joint wrongdoers, who are codefendants with those released. and other expressions in the instrument are not inconsistent with the contention of such right, the intention of the parties that the instrument should not operate as a release of such codefendants sufficiently appears."

To a like effect is the decision in the Home Telephone Co. v. Fields, 150 Ala. 306, 43 South, 711. Also Chicago, A. R. & Co. v.

Averill 224 Ill., 516, 79 N. E. 654; Gilbert v. Finch, 173 N. Y. 455, 66 N. E. 133, 61 L. R. A. 807 93 Am. St. Rep 623; Robertson v. Trammell, 98 Tex. 364, 83 S. W. 1098; El Paso & Southwestern R. Co. v. Darr (Tex. Civ. App.) 93 S. W. 166; Carey v. Bilby, 129 **Fed. 203, 63 C. C. A. 361.**

The earlier cases are somewhat committed to the doctrine that a release of one or more joint tort-feasors was a release of all, but this doctrine has been modified and changed by the weight of modern authorities, and our courts and the weight of authorities are committed to the opposite rule; that is, that a release of one joint tort-feasor **is** not a release of all.

The fourth assignment is directed at the sufficiency of the evidence to support the judgment. Plaintiff in error has failed to assign any good reason or cite any authorities in support of this assignment. We have carefully read the evidence in this case, and are convinced that there was evidence tending to support the verdict of the jury and the judgment of the court.

We are of the opinion that said cause should be affirmed and it is so ordered.

By the Court: It is so ordered.

### On Rehearing.

PER CURIAM. Petition for rehearing in this case was heretofore granted, and the cause has been reheard on oral argument and briefs submitted; and after further consideration of the questions urged for reversal of this case the court is of the opinion that the former decision is correct, and the opinion of the Commissioner filed on February 12, 1918, is adopted as the opinion of the court in this case.