**Jeff KIRKPATRICK, Appellant,**

v.

**The CHRYSLER CORPORATION, a foreign corporation, Appellee.**

No. 81604.

Supreme Court of Oklahoma.

June 18, 1996.

Rehearing Denied July 19, 1996.

Michael D. Parks, Parks & Wiley, McAlester, for Appellant.

Stephen Peterson and Michael S. McMillin, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for Appellee.

LAVENDER, Justice.

We decide in this case whether the trial court erred in granting summary judgment to appellee, Chrysler Corporation (Chrysler) in a personal injury lawsuit brought by appellant, Jeff Kirkpatrick (Kirkpatrick). Summary judgment was granted on the basis a release and satisfaction of judgment filed in a prior case, brought when Kirkpatrick was a minor by his mother as next friend against the driver of the truck in which he was riding when injured, barred any lawsuit against Chrysler. We hold the grant of summary judgment was error.

## PART I: STANDARD OF REVIEW.

Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991). We, like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee*, 683 P.2d 535, 536 (Okla.1984). Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

## PART II: FACTS AND PROCEDURAL HISTORY.

After turning eighteen (18) years old, Kirkpatrick sued Chrysler to recover for injuries he suffered years earlier when he fell out of a truck being driven by Ricky Tanner. The basic allegations against Chrysler are that because of defective design and/or manufacture the passenger door of the truck flew open while Tanner turned a corner and Kirkpatrick fell to the ground. Chrysler moved for summary judgment arguing a release and satisfaction of judgment, filed in a prior case brought against Tanner by Kirkpatrick's mother as his next friend when he was a minor for the same injuries, barred suit against it. Three documents were attached to the summary judgment motion, all of which had been filed in the prior case: the petition, a journal entry of judgment and a release and satisfaction of judgment executed by the mother and the attorney representing mother and Kirkpatrick in the matter. Chrysler relied on the rule that a plaintiff is entitled to only one satisfaction for a single cause of action and is prohibited from splitting the cause of action by attempting to apportion damages among joint or concurrent tortfeasors—that although such tortfeasors may be proceeded against either jointly or separately and separate judgments may be taken against them, once a judgment has been fully satisfied by one of the tortfeasors, the cause of action is extinguished and proceedings against others are barred. We refer to this rule of law as the one satisfaction rule.

It is important to highlight early what Chrysler does not argue or assert here. Chrysler does not argue: 1) that the amount of money received by Kirkpatrick as specified in the release and satisfaction of judgment (as stated below—$10,000.00) is truly full compensation for his injuries or that this record conclusively shows the amount was intended by the parties to the prior case to represent full compensation; 2) that actual adjudication on the merits of the issue of the amount of damages, by judge or jury, occurred in the previous case; or 3) that any document submitted by it conclusively shows the parties to the prior case, or the judge handling it, intended to discharge Chrysler from liability or bar subsequent proceedings against it. In essence, Chrysler takes the position it does not matter what the parties or the judge intended, whether full compensation has been received or, whether the issue of damages was actually litigated in the earlier case.

Kirkpatrick responded to the motion arguing the prior case was a friendly suit—the petition, journal entry of judgment and release and satisfaction of judgment all being filed on the same day—and that the judgment in the case was intended only as an order approving a settlement agreement where Tanner, by his liability insurance carrier, Atlas Mutual Insurance Company, would agree to settle and compromise the matter for the liability limits of the Atlas policy, a sum of $10,000.00. A review of the judgment appears to reveal the matter did proceed along the lines of a friendly suit— the journal entry of judgment so recites in its first paragraph—and that the judgment was, indeed, only meant to approve the settlement, and apportion $4,000.00 for attorney fees to the attorney for Kirkpatrick and his mother, and the remaining $6,000.00 for payment of medical bills incurred in treating Kirkpatrick.[1] Clearly, nothing in the journal entry of judgment, or in any other document in the reviewable record, reflects actual adjudication on the merits of the issue of the amount of damages by judge or jury, and nothing in the record conclusively shows the sum of $10,000.00 was intended by the parties to the case, or the judge, to represent full compensation for Kirkpatrick's injuries.[2]

In addition to arguing the judgment was merely a court approval of a settlement, Kirkpatrick asserted the release and satisfaction of judgment was intended to discharge only Tanner and Atlas. Along with this argument, Kirkpatrick claimed the release and satisfaction of judgment should be treated like a release, covenant not to sue or similar agreement under 12 O.S.1991, § 832(H), a

part of the Uniform Contribution Among Tortfeasors Act (UCATA), and applying § 832(H) to it would not have the effect of discharging Chrysler.

The release and satisfaction of judgment provides as follows:

Now on this 11 day of February, 1987, Jeffrey Kirkpatrick, by and through his mother and next friend, Sue Pursley, and their attorney Michael Parks, acknowledge receipt of payment in the amount of $10,-000.00 from Ricky Tanner, and his liability insurance carrier, Atlas Mutual Insurance Company, in full and complete satisfaction of all claims, causes of action, and rights, previously asserted herein, for injuries received by Jeffrey Kirkpatrick, both past and future, and for all of his damages of any type, arising out of the motor vehicle accident of June 25, 1985, on North Hickory Street in Pittsburg County, Oklahoma inside the city limits of McAlester, Oklahoma. Further, said Plaintiffs acknowledge receipt of said amount in full and complete satisfaction of that judgment previously rendered herein on the 11 day of February, 1987, and hereby release the Defendant, Ricky Tanner, and Atlas Mutual Insurance Company, from any further claims or responsibilities on said judgment.

 The trial court after briefing and oral argument agreed with Chrysler. The Court of Appeals reversed, finding merit in the argument the journal entry of judgment was nothing more than a court approval of settlement on behalf of a minor and that only the

---

1. The journal entry of judgment in the prior case also states that because there will be no balance after the $10,000.00 is used for attorney fees and medical bills there was no need for the trial judge to establish a court-approved depository account for any settlement proceeds under 12 O.S.Supp.1984, § 83. Section 83 generally requires monies recovered in any court proceeding by a next friend or guardian ad litem on behalf of a person under eighteen (18) years old, in excess of $1,000.00 over sums sufficient to pay medical bills and attorney fees, be deposited in a court-approved bank, savings or loan institution account and that withdrawals be allowed only upon court approval. The provision was amended in 1993 in a way not material. 12 O.S.Supp. 1995, § 83.

2. Although as will be seen, the release and satisfaction of judgment broadly indicates receipt of the $10,000.00 as full and complete satisfaction as to all claims, causes of action or damages, said document must be read in context, along with the journal entry of judgment, which explicitly indicates the $10,000.00 is being paid as part of a settlement for only the driver's liability insurance coverage. Thus, the broad language in the release and satisfaction of judgment cannot be taken as conclusive evidence of an agreement by the parties to the prior case that $10,000.00 represented full compensation for Kirkpatrick's injuries.

driver was discharged from further liability. We previously granted certiorari.[3]

## PART III: ANALYSIS.

Although as noted in PART II, the judgment in the prior case does appear merely to be a court approval of a settlement between the parties to that case and the driver's insurance carrier, we have no doubt part of the intent of the judgment was to act as an enforceable award in favor of Kirkpatrick's mother as his next friend and against Tanner, albeit an award that reflected only a compromised sum in the amount of liability insurance coverage—i.e. the amount of damages was not actually adjudicated on the merits. We, therefore, assume a judgment of $10,000.00 was made in the earlier case, but that such judgment was an agreed or consent judgment based on a settlement. We also must assume on the basis of this record that the $10,000.00 was not intended to reflect full compensation and did not, in fact, represent full compensation for Kirkpatrick's injuries. No conclusive evidence shows otherwise. Further, our review of the record reveals no conclusive evidence Chrysler was intended to be discharged by virtue of the Tanner settlement and no evidence at all exists it was named or otherwise specifically identified in any pertinent document as a joint or concurrent tortfeasor to be discharged. With these understandings we begin our analysis.

Generally, tortfeasors are thought of as joint tortfeasors when there is some concerted action on their part causing injury—when there is some common purpose or design. *Hammond v. Kansas, O. & G. Ry. Co.*, 109 Okla. 72, 234 P. 731, 732 (1925). In such a situation, i.e. where the tortfeasors act in concert, in pursuit of a common design, they have each historically been held liable for the entire result or damage done. W. PROSSER, HANDBOOK OF THE LAW OF TORTS, Ch. 8, § 46, at 291 (4th ed. 1971). Tortfeasors are classified as concurrent tortfeasors when their independent acts concur to produce a single or indivisible injury. *Brigance v. Velvet Dove Restaurant*, 756 P.2d 1232, 1233 (Okla.1988). In other words, in the case of joint tortfeasors some type of concert of action (or omission) is required, while in the case of concurrent tortfeasors such concert is lacking, but a single or indivisible injury or harm is nonetheless produced. Notwithstanding the lack of concerted action and even though the act of one may not have alone caused the injury or brought about the result, it has long been recognized in Oklahoma that concurrent tortfeasors, like joint ones, are each responsible for the entire result if the plaintiff is free from negligence. *Id.* at 1233–1234; *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613, 617 (Okla.1980); *All American Bus Lines v. Saxon*, 197 Okla. 395, 172 P.2d 424, 429 (1946).

In the present situation, Chrysler and the driver appear to be concurrent tortfeasors as

---

**3.** We note both parties have attempted to improperly expand the reviewable record by attaching documents to their appellate submissions. Kirkpatrick attached to his brief in chief a document entitled Parents–Guardian Release and Indemnity Agreement, signed by his mother, individually and as next friend, which, among other things, contains an express recital that Kirkpatrick is reserving any claims against Chrysler. Chrysler on the other hand attached to its petition for certiorari, a Court Minute signed by the trial judge in the prior case that states, "[j]udgment granted in the amount of $10,000.00. Attorney fees to be paid out of Settlement." As Chrysler correctly pointed out in proposition II of its answer brief, after summary judgment is granted a party cannot rely on evidentiary material not before the trial court at the time of ruling on the summary judgment motion. *Frey v. Independence Fire and Cas. Co.*, 698 P.2d 17, 20 (Okla.1985). A ruling on a summary judgment motion must be made on the record which is

then before the trial court, not on one that could have been assembled. *Id.* In short, a party may not supplement the record on appeal by injecting into it material that was not before the trial court when ruling on the matter. *Id.* Although the trial judge in the instant appeal was the same as in the prior case brought by Kirkpatrick's mother against the driver of the vehicle, there is no indication in this record the trial court considered either of these documents in rendering his decision in regard to Chrysler's motion for summary judgment. We, therefore, may not consider these documents in considering this appeal. However, as we set out in the text, we assume the journal entry of judgment in the prior case was intended to act as an award of $10,000.00 against the driver of the vehicle and in favor of Kirkpatrick's mother as next friend, although as noted in the text, nothing in the record reflects there was an actual adjudication on the merits of the issue of the amount of damages.

there is no indication of concerted action, but, instead, that the independent acts (or omissions) of each concurred to produce Kirkpatrick's injuries. The important point for our purposes is that no party here disputes and, both appear to assume, Tanner and Chrysler are each claimed to be liable for the entire harm suffered by Kirkpatrick in his fall from the vehicle. In such a case, where concurrent tortfeasors are each liable for the entire harm, the one satisfaction rule has been applied and satisfaction of judgment in regard to one tortfeasor has generally been viewed as a bar to further proceedings against all. *Brigance v. Velvet Dove Restaurant, supra,* 756 P.2d at 1233–1234.

■ Our law as to the effect of a satisfaction of a judgment has been as follows: "[w]here liability is joint and several, the injured party may institute several suits against multiple tortfeasors, but satisfaction of a judgment against one of the tortfeasors bars a judgment against the other tortfeasors." *Id.* at 1234. A long line of cases have applied the rule. *Cartwright v. MFA Mutual Insurance Co. of Columbia, Missouri,* 499 P.2d 1380 (Okla.1972); *Powell v. Powell,* 370 P.2d 909 (Okla.1962); *Sykes v. Wright,* 201 Okla. 346, 205 P.2d 1156 (1949); *City of Wetumka v. Cromwell–Franklin Oil Co.,* 171 Okla. 565, 43 P.2d 434 (1935); *Cain v. Quannah Light & Ice Co.,* 131 Okla. 25, 267 P. 641 (1928); *Allen v. Ouachita Marine and Industrial Corp.,* 606 P.2d 607 (Okla.Ct.App., Div.1, 1979).

The basic rationale for the rule was stated in *Cain v. Quannah Light & Ice Co.,* as follows:

> Although several separate suits may be brought for a joint liability, yet, where the injury is an entirety, the damage resulting therefrom cannot be apportioned among the wrongdoers, nor divided into separate demands; and where the injured party sues one of the wrongdoers, and demands only part of the damage which he suffered by the injury, a recovery and satisfaction therein will operate as a bar to any further claim of damages against the others.

267 P. at 641, *Second Syllabus.* Another way of stating this rationale is that when a plaintiff suffers a single-indivisible injury at the hands of two or more tortfeasors, each being liable for the whole injury—only one cause of action exists and once judgment is entered and satisfaction of that judgment is made by payment of it in full, the cause of action is extinguished and to allow a plaintiff to proceed further against other potentially liable tortfeasors would sanction an impermissible splitting of the cause of action. *Sykes v. Wright, supra,* 205 P.2d at 1159. It has also been understood that the one satisfaction rule is equitable in nature and its central purpose is to prevent a plaintiff from gaining double recovery, i.e. it is ultimately to prevent unjust enrichment. W. PROSSER, HANDBOOK OF THE LAW OF TORTS, Ch. 8, § 48, at 299 (4th ed. 1971); *See also Milicevich v. Sacramento Medical Center,* 202 Cal.Rptr. 484, 155 Cal.App.3d 997, 1002–1003 (1984)(recognition that one or single satisfaction rule is designed to prevent double recovery); *Garner v. Wyeth Laboratories, Inc.,* 585 F.Supp. 189 (D.C.S.Car.1984)(plaintiff entitled to one compensation for his loss).

In applying the rule it has not appeared to matter to this Court whether there was an actual adjudication on the merits of the issue of the amount of damages by judge or jury, or whether the judgment entered was the result of a compromise and settlement. In other words, we have applied the rule even to an agreed or consent judgment, never intended by plaintiff, the tortfeasor settled with or the trial judge, to act as a reflection of full compensation for the plaintiff's injuries. *Cartwright v. MFA Mutual Ins. Co. of Columbia, Mo., supra,* 499 P.2d at 1381 and 1384; *Powell v. Powell, supra,* 370 P.2d at 911–912; *Sykes v. Wright, supra,* 205 P.2d at 1158–1159; *Cain v. Quannah Light & Ice Co., supra,* 267 P. at 643–644. Also determined by this Court to be immaterial was the fact it was, in essence, recited in the agreed or consent judgment that further proceedings against other tortfeasors were being reserved, i.e. an obvious declaration other potential tortfeasors were not to be considered discharged. *Id.* at 642–644. Finally, in *Powell v. Powell* we saw no distinction as to application of the rule merely on the basis the injured party was a minor. 370 P.2d at

912–913. In other words, our cases have applied the one satisfaction rule quite mechanically in all those situations where judgment was actually entered against one party and in favor of another, ignoring the fact, or evidence that would lead one to conclude, the judgment was in reality merely meant to memorialize or be a part of a compromise and settlement—as long as judgment was entered the rule applied. *Sykes v. Wright*, 205 P.2d at 1158–1159.

The rationale for such seemingly harsh result and strict adherence to the rule was stated in *Cain v. Quannah Light & Ice Co.* as follows:

> The question here involved is not a question of plaintiff's intention; it is a question of her legal right to split her cause of action, to apportion her damage, and to recover by separate actions separate portions thereof. Plaintiff had but one cause of action. This cause of action, of course, existed against all wrongdoers, but it was a single cause of action, and when suit was filed on this cause of action . . . and such claim reduced to judgment, the cause of action then merged in the judgment, and the satisfaction of the judgment was a satisfaction and settlement of the cause of action.
>
> The plaintiff, having no legal right to split her cause of action, the court by its judgment could not legally grant such right, if, in fact, it so intended. It must be borne in mind that it is not the rendition of the judgment that operates as a bar, but it is the satisfaction thereof. If the court, by its judgment, intended to reserve to the plaintiff the right to proceed against [the other tortfeasor], after full and complete satisfaction of the judgment, this portion of the judgment would be inoperative as beyond the power of the court to render.

267 P. at 643–644.

In our view, assuming this rationale at one time had some validity, we believe it no longer does and we reject what we believe was an unnecessary mechanistic application of the one satisfaction rule as we will explain below.

First, the rationale given in *Cain v. Quannah Light & Ice Co.* was the subject of criticism almost fifty (50) years ago because it was devoid of common sense. In dissent to the majority opinion in *Sykes v. Wright* Justice Halley said the following;

> Long ago we adopted the rule that a plaintiff could release one joint tort-feasor without releasing the others, either before or after judgment, and no harm can be done now by going one step further and permitting a plaintiff to settle as to one joint tort-feasor and have the settlement put in judgment without prejudice to the right to pursue the other joint tort-feasors in a separate action.
>
> Every safeguard was thrown about the settlement in the [prior] action . . . to protect the right to proceed against the other tort-feasors; and to say that because there can be but one satisfaction of a judgment, when the record showed that it was never intended that the judgment taken was a full and complete satisfaction of the death claim as to all tort-feasors, might be logical, but it is not common sense. Here the [settling tortfeasor] desired [the] settlement to go to judgment, but had no intention to satisfy the plaintiff's claim in full as to the other tort-feasors in the accident. The defendants in this case reap where they have not sown, and are being relieved from possible liability when it was not so intended. If we hold that the rule laid down in *Cain v. Quannah Light & Ice Company*, 131 Okl. 25, 267 P. 641, cuts off the right to maintain a second action, regardless of the plain intention of the parties in the first action to preserve the right to sue other persons who may be liable for the tort, I think that case should be overruled insofar as it prohibits such action. (some citations omitted)

205 P.2d at 1160 (Halley, J., dissenting).

Justice Halley's criticism of the rule appears to have been valid when one considers, as he essentially stated, it had long been recognized a plaintiff by varying other methods has been able to settle and compromise with one tortfeasor and receive only part of his total damages, without giving up any right to recover the balance of any damages that may be due in a subsequent proceeding

against other tortfeasors. In the early case of *Bland v. Lawyer-Cuff Co.*, 72 Okla. 128, 178 P. 885, 889–890 (1918), we allowed a plaintiff to further proceed against a tortfeasor after dismissing his case against certain co-defendant tortfeasors upon settling with these others for a certain sum. Likewise, we held in *All American Bus Lines v. Saxon, supra,* that a plaintiff who had filed actions against joint or concurrent tortfeasors could dismiss the action against one co-defendant, enter into a covenant not to sue for a certain sum of money from the co-defendant, and still be allowed to proceed against others who might be liable. 172 P.2d at 426–429. *See also Safety Cab Co. v. Fair,* 181 Okla. 264, 74 P.2d 607, *First Syllabus* (1937)(acknowledgment by plaintiff of satisfaction against two of five defendants sued as joint tortfeasors will not release others unless instrument shows it was intended to have such effect).

Thus, our cases have long held a plaintiff can settle with one of two or more joint or concurrent tortfeasors for a specified amount of money without releasing or discharging others, as long as a judgment followed by a satisfaction of that judgment is not filed of record in the case. In other words, although we have not considered it to be an impermissible splitting of a cause of action, we have, for all practical purposes, allowed a plaintiff to do exactly what we prohibited in *Cain v. Quannah Light & Ice Co.*—settle with one tortfeasor for a specified amount of money without discharging other potentially liable tortfeasors—as long as the settlement ended in a dismissal of the case, rather than the taking of an agreed or consent judgment that would be followed by a satisfaction of that judgment filed of record. In essence, our prior cases have set up an irrebuttable or

conclusive presumption that if a judgment is entered in favor of the plaintiff and against a tortfeasor potentially liable along with others, which is followed by satisfaction of that judgment, the one satisfaction rule will be applied, notwithstanding the truth of the situation, as apparently was the case here, that the judgment was entered only as part of a compromise and settlement never intended to discharge non-settling tortfeasors or to reflect full compensation for injuries suffered.[4]

We consider the above distinction between settlements calling for an agreed judgment to be entered followed by satisfaction of that judgment on the one hand and settlements which call for dismissal of a prior case to be an anomaly in our law—an anomaly that has been the source of confusion in Oklahoma for a number of years. *Biles v. Harris,* 521 P.2d 884, 887 (Okla.Ct.App.Div.1, 1974)(fact that satisfaction of judgment for less than all damage releases others liable when a release properly written does not, has been confusing to able lawyers in Oklahoma). We now correct the anomalous situation Justice Halley would have corrected almost fifty (50) years ago.

When the issue of the amount of damages has been the subject of actual adjudication on the merits by either judge or jury, or the parties actually agree via a consent or agreed judgment that the amount settled for should actually represent full compensation for a plaintiff's injuries, and the plaintiff is paid such amount, it makes perfect sense and comports with simple justice to preclude a plaintiff from proceeding against other tortfeasors. In the former situation, the issue of the amount of damages has actually been determined on the merits through the judi-

---

4. What we believe to be the troubling inconsistency of the one satisfaction rule is amply demonstrated in a law review article from 1972 entitled *Joint Tortfeasors: Settling the Minor's or Incompetent's Case in Oklahoma,* 25 Okla.L.Rev. 287 (1972). There, the author points out the potential pitfalls of settling a pending case involving a minor. First, defense attorneys are counseled to seek court approval of any settlement involving a minor. This is sound advice given our jealous protection of the rights of minors and incompetents. *See Abel v. Tisdale,* 619 P.2d 608, 610 (Okla.1980)(even in the absence of a controlling statute requiring judicial approval

of settlement of a wrongful death case where minors had a beneficial interest in proceeds of settlement court approval of settlement necessary); 30 O.S.1991, § 4–702 (where legal guardian has been appointed for a ward—not the case in *Abel*—statutory directive compels court approval). However, the author then points out that if a settlement is followed by a consent or agreed judgment, actually adjudging that plaintiff is entitled to recover a certain sum of money, rather than only approval of the settlement, the one satisfaction rule will be applied, even though this result is contrary to the plaintiff's intention and lets off the non-settling tortfeasors.

cial process and, in the latter it can be conclusively presumed full compensation is reflected by the agreed settlement amount. In such cases, a plaintiff should not be allowed to proceed against others because it can be confidently said that full compensation has already once been recovered for injuries suffered. Allowing additional opportunities to recover from other potential tortfeasors after a plaintiff has already had one full opportunity to prove the full amount of his damages, an amount which has then been paid, or where the plaintiff has agreed he has been paid full compensation, would also breed inefficiency and thwart the beneficial goal of bringing finality to litigation. However, when the agreed or consent judgment is merely part of a settlement of the case never intended to discharge absent tortfeasors and never intended to represent full compensation we believe a different result should obtain. · Accordingly, we can no longer adhere to the mechanistic approach we have appeared to follow since this Court's decision in *Cain v. Quannah Light & Ice Co., supra.*

It has been recognized elsewhere that the rigid application of the one satisfaction rule is faulty when an agreed or consent judgment based on a settlement is at issue. In holding that satisfaction of a consent judgment based on a settlement with a driver involved in an accident for his applicable insurance coverage did not discharge the manufacturer of a car seat for injuries to a minor, the Court of Appeals of Maryland in *Welsh v. Gerber · Products, Inc.*, 315 Md. 510, 555 A.2d 486 (1989), said the following:

> As a factual matter, a consent judgment may, or may not, involve a determination of the amount that represents the complete equivalent of the plaintiff's damages. Where, as apparently is the case here, the parties make no attempt to agree upon or litigate the fair value of the claim, but agree instead to accept the available insurance coverage while specifically reserving the right of the plaintiff to proceed against others for full compensation, a consent judgment entered to give effect to the

agreement does not in fact represent the result of litigation of the issue of damages. On the other hand, the parties to a proceeding are not precluded from reaching an agreement concerning the full measure of damages, and where a judgment is entered in confirmation of that type of agreement, it will represent the judicial determination, albeit by consent, of that issue.

\* \* \*

> When an action for damages proceeds to trial and a judgment is entered on the verdict, that judgment represents a final determination of the plaintiff's claim for those damages. It is entirely appropriate to bind the plaintiff to that assessment of damages, directly and collaterally, even though the determination may be less than the plaintiff believes is fair, or may be thought to have been a result of jury compromise. . . . Once final, the judgment is properly given preclusive effect as to the issues actually litigated. But these principles do not necessarily apply to a consent judgment. The issue of full damages generally has not been litigated when a consent judgment is entered and, as we have previously pointed out, the parties may or may not agree that the amount being entered by consent represents the plaintiff's full claim for damages.

*Id.* 555 A.2d at 490 and 492.

The Maryland court in *Welsh* analyzed the one satisfaction rule in the context of the issue preclusion doctrine, i.e. whether the manufacturer of the car seat could use defensively the doctrine of collateral estoppel, even though the issue of damages had not actually been litigated in the prior lawsuit against the driver. *Welsh* held, in conformity with what the court considered the modern view, that litigation of the issue of damages against the manufacturer would not be precluded by the prior consent judgment unless that issue had actually been previously litigated, or the settling parties intended preclusion by the consent judgment. *Id.* 555 A.2d at 492.[5]

A federal district court in Texas, although not resting its decision on issue preclusion,

---

**5.** This Court has recently recognized the following as to the scope of the defense of issue preclusion:

> Regardless of whether the parties must be identical in both proceedings or whether only the party against whom the estoppel is being

applied Texas law to reach the same result in regard to the reach of an agreed judgment which had been entered in the absence of actual adjudication of the amount of damages. In rejecting the one satisfaction rule when an agreed judgment was involved the court in *Daniel v. Ansul Company*, 547 F.Supp. 5 (S.D.Tex.1980), stated:

> It is common knowledge that many, if not most, personal injury claims are ultimately settled. While the suit of an adult plaintiff can be terminated by a simple order of dismissal, the court is also well aware that many attorneys choose to terminate settled lawsuits by submitting to the court an agreed judgment reciting the terms of the settlement. There is simply no logical basis for having one rule in the former instance and a different rule in the latter instance.

*Id.* at 8.[6]

Although not extensively discussed in *Welsh*, the views expressed therein by the Maryland court are generally consistent with those laid down by the RESTATEMENT (SECOND) OF TORTS § 886 (1979) and the RESTATEMENT (SECOND) OF JUDGMENTS § 50 (1982). Section 886 provides:

> § 886. Satisfaction of a Judgment Against One of Several Tortfeasors
>
> The discharge of a judgment against one of several tortfeasors each of whom is liable for a single harm is treated like a release or covenant not to sue given to one of several tortfeasors for a claim not reduced to judgment.

Comment b to § 886, explains, however, the following:

> If the adjudication of the loss has the effect of delimiting the injured party's entitlement to redress on the ground that the actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question, a payment in full of the judgment has

---

asserted must be the same, issue preclusion applies only to those issues actually adjudicated and necessary or essential to the prior judgment. The party relying on a claim of issue preclusion bears the burden of establishing that the prior litigation has actually determined the question of fact sought to be concluded. The test is whether the question of fact in issue in the second action is a question which was actually determined in the first adjudication. (footnotes containing citations omitted)

*Carris v. John R. Thomas & Associates, P.C.*, 896 P.2d 522, 528 (Okla.1995). *Carris* involved answering the question of whether the result of an arbitration proceeding between a contractor and a power authority that had hired the contractor to do construction work precluded a suit by the contractor against an architectural firm. *Carris* held it did not. *Carris*, however, is not dispositive of this appeal for the reason the power authority and architectural firm were not joint tortfeasors. *Id.* at 526. Further, the claim against the power authority that was arbitrated was contractual in nature, whereas the claim against the architectural firm sounded in tort. *Id.* On these bases *Carris* distinguished any applicability of *Cain v. Quannah Light & Ice Co.*, 131 Okla. 25, 267 P. 641 (1928) or its progeny. 896 P.2d at 526.

**6.** Other courts have recognized the distinction between situations where the issue of the amount of damages has actually been litigated and one where a judgment entered was based on an agreed settlement. However, these cases are not directly applicable to our situation because they were based on the interpretation of specific statutory schemes. For example, in *Milicevich v. Sacramento Medical Center*, 202 Cal.Rptr. 484, 155 Cal.App.3d 997 (1984), satisfaction of a statutory consent judgment was held not to preclude further proceedings against other tortfeasors where by statute such a judgment was expressly deemed to be a compromise and settlement. In *Vermilya v. Carter Crompton Site Development Contractors, Inc.*, 201 Mich.App. 467, 506 N.W.2d 580 (1993), a satisfied prior judgment against certain tortfeasors entered pursuant to statutory mediation process did not preclude subsequent proceedings against another tortfeasor because the mediation award culminating in the judgment did not represent full compensation, but was more in the nature of a settlement figure reached by considering plaintiff's damages as only one of several factors. *Id.* at 582–583. *See also Johnson v. Collier*, 567 So.2d 1311 (Ala. 1990)(by statute, consent judgment based on settlement with one tortfeasor must be treated like a pro tanto settlement according to its terms and intentions of the parties). Finally, in *Daniel v. Ansul Company*, 547 F.Supp. 5 (S.D.Tex.1980), in addition to an agreed judgment involving an adult plaintiff, the settlement also involved claims of minor plaintiffs. In that Texas procedure mandated that a minor plaintiff may not settle with a tortfeasor without court approval obtained through the so-called friendly suit, it was held that an agreed judgment based thereon, followed by its payment, would not be governed by the one satisfaction rule.

the effect of satisfying in full the injured party's claim against any of the tortfeasors and there is no longer an enforceable claim. (citations omitted)

Section 50 of the Restatement (Second) of Judgments provides:

§ 50. Discharge of Judgment Against One of Several Co–Obligors

When a judgment has been rendered against one of several persons each of whom is liable for a loss claimed in the action on which the judgment is based:

(1) A satisfaction or release of the judgment, or covenant not to execute upon it, or other agreement terminating in whole or in part the judgment debtor's obligation, does not discharge the liability of any of the other persons liable for the loss, except:

(a) To the extent that the agreement may so provide; and

(b) To the extent required by the law of suretyship.

(2) Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss.

Comment d to § 50, like its counterpart, comment b to § 886, explains, however, that where the amount of the loss has actually been litigated, satisfaction of a judgment, i.e. payment of it in full, puts an end to the matter as to other potential tortfeasors. It provides:

The rule that payment of a loss, in whole or in part, by one of several obligors reduces the amount that may be obtained from other obligors also applies when the amount of the loss has been adjudicated. The adjudication of the amount of the loss also has the effect of establishing the limit

of the injured party's entitlement to redress, whoever the obligor may be. This is because the determination of the amount of the loss resulting from actual litigation of the issue of damages results in the injured person's being precluded from relitigating the damages question. See § 29. Therefore, when a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible (sic) claim against any other obligor who is responsible for the same loss.

RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1982), referred to in comment d to § 50, concerns issue preclusion in subsequent litigation with others.

Whether we rely on the principles of issue preclusion or not, it is our view the results reached in *Welsh* and *Daniel* are sound and the views expressed by § 886 of the Restatement (Second) of Torts and § 50 of the Restatement (Second) of Judgments generally comport with what we believe should be the law in this jurisdiction. We, thus, conclude, that in the absence of actual adjudication on the merits of the issue of the amount of damages, satisfaction of an agreed or consent judgment will generally be treated like a release, covenant not to sue or similar agreement.

Recently, we interpreted 12 O.S.1991, § 832(H)(1), a part of the Uniform Contribution Among Tortfeasors Act (UCATA), in regard to when a release given to one tortfeasor will be considered to act as a discharge of other potential tortfeasors liable to an injured party for the same injury or wrongful death. We held in *Moss v. City of Oklahoma City*, 897 P.2d 280 (Okla.1995), that such a release will discharge other potential tortfeasors only if they are named or otherwise specifically identified in the release as persons to be discharged.[7] We believe the

---

7. When we decided *Moss v. City of Oklahoma City*, 897 P.2d 280 (Okla.1995), 12 O.S.1991, § 832(H)(1), provided in pertinent part:

H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort-feasors from liability for the injury or

wrongful death unless its terms so provide; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater[.] Section 832(H)(1) was amended in 1995 in pertinent part to read, "[i]t does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is

same general rule should be applied where satisfaction of an agreed or consent judgment is involved, i.e where there is no actual adjudication on the merits of the issue of the amount of damages.[8] Like the Maryland Court of Appeals in *Welsh*, however, we realize the parties to the settlement may intend that the amount of the settlement embodied in a consent or agreed judgment is to represent full compensation for a plaintiff's injuries. In such a situation, we see no reason why a plaintiff should not be precluded from further litigation against other potential tortfeasors.

The bottom line here is that when it is clear a judgment has been entered merely as a reflection of a compromise settlement between a victim and one tortfeasor, never intended to act as a discharge of other potentially liable tortfeasors, or to reflect full compensation for injuries suffered, there is no good reason to apply a rigid or strict rule of law that other tortfeasors are discharged or that the cause of action has been extinguished. To the extent *Cain v. Quannah Light & Ice Co.* and any of its progeny are inconsistent with the views expressed herein as to the application of the one satisfaction rule, they are disapproved and overruled. To us, this prior law, in applying the one satisfaction rule, put form over substance and acted as a roadblock in the way of settlement, something that, instead, should be encouraged.

Therefore, we hold that where an agreed or consent judgment is entered against a tortfeasor based on a compromise and settlement, i.e. a judgment entered without actual adjudication on the merits of the issue of the amount of damages, a satisfaction of that judgment will not discharge, or bar a subsequent suit against, other potential tortfeasors who might be liable for the same harm, unless the other potential tortfeasors are named or otherwise specifically identified in the satisfaction of judgment (or some other pertinent document) as persons to be discharged, or unless it is somehow otherwise shown the parties to the compromise and settlement intended the amount settled for to represent full compensation for all injuries. In the final analysis we believe the approach adopted today is better reasoned than the one applied by this Court in the past and that a fresh approach in the area as to application of the one satisfaction rule will foster and encourage settlement, rather than act as a hindrance to this salutary device.

■ In that no conclusive evidence exists in this record there was an actual adjudication on the merits of the issue of the amount of damages by judge or jury, that Chrysler was named or otherwise specifically identified as an entity to be discharged in any pertinent document, or that the $10,000.00 was intended to represent full compensation for all injuries, it was error for the trial court to grant summary judgment to Chrysler.[9]

Consistent with the views expressed herein, the Court of Appeals' opinion is **VACATED** and the trial court judgment granting summary judgment to appellee, the Chrysler Corporation is **REVERSED** and the matter is **REMANDED.**

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, J., concurs in part; dissents in part.

specifically named...." See 12 O.S.Supp.1995, § 832(H)(1). As can be seen, the phrase following the word unless was changed from "its terms so provide" to "the other tort-feasor is specifically named".

8. Our ruling in this case will not disturb cases such as *Brigance v. Velvet Dove Restaurant*, 756 P.2d 1232 (Okla.1988), where we precluded suit against concurrent tortfeasors—servers of alcohol to driver involved in auto accident—when the plaintiff had actually litigated his damages in a federal court case against the driver and won a jury verdict, and appeared to be free of negligence, upon which judgment was entered and paid. 756 P.2d at 1233.

9. We finally note that compensation received as a result of the settlement must, of course, be deducted from any judgment that might eventually be entered against Chrysler. To rule otherwise would sanction the potentiality for double recovery.